NELSON, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 14—April 7, 1925.*

*Criminal law: View of premises of alleged crime: Misconduct of jury: Harmless error: Intoxicating liquors: Possession as prima facie evidence of unlawful possession: Instructions: Prescription liquor: Burden of proof: Evidence: Sufficiency.*

1. In an action for the unlawful possession of intoxicating liquor and the destruction of evidence, the fact that the jury viewed the premises where the offense occurred was no ground for complaint where the view was made at defendant's request; and the fact that the sheriff and a prohibition officer accompanied the jury to the premises was no ground for complaint, where the court directed them to do so in defendant's presence and he made no objection.   p. 652.

2. The act of the jury in opening a door to a room other than the one in which the liquor was found, which was contrary to directions given by the court, did not constitute reversible error, no wilful or intentional disobedience appearing on the part of the jury.   p. 652.

3. The fact that the prohibition officer took a jar of home brew from a room which the jury were not required to view did not constitute reversible error, where the jar was carried away after the jury had left and it did not appear that any member of the jury knew its contents and that only one or two saw it at all; and the fact that three or four of the jury, after viewing the premises, passed out behind the others did not constitute such separation of the jury as would be ground for a new trial.   p. 653.

4. Intoxicating liquors found in a bedroom on the second floor of defendant's soft-drink stand, which his wife took care of, are *held* to have been "found on defendant's premises" within the meaning of sub. (30), sec. 165.01, Stats. 1923.   p. 654.

5. Possession of moonshine whisky found on defendant's premises is *prima facie* evidence of unlawful possession, where it was not claimed that defendant had any permit for the possession or sale of privately manufactured distilled liquors; and an instruction on the issue of whether defendant knew that liquor was kept in a room on his premises is *held* sufficiently favorable to defendant.   p. 655.

6. Intoxicating liquor found in defendant's possession was *prima facie* unlawfully in his possession, in view of sub. (28), sec. 165.01, Stats. 1923; and the burden of showing that such liquor is prescription liquor is on defendant.   p. 656.

7. The verdict of the jury, both as to possession of intoxicating liquor and destroying evidence, is *held* supported by the evidence, which is detailed in the opinion. p. 657.

ERROR to review a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The cause was submitted for the plaintiff in error on the brief of *Reilly & O'Brien* of Fond du Lac, and for the defendant in error on that of *James•Murray,* district attorney of Fond du Lac county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general.

JONES, J. The plaintiff in error, hereinafter called the defendant, was charged with the unlawful possession of intoxicating liquor and with the destruction of evidence during a raid on the premises by officers. He was found guilty of possessing intoxicating liquor and guilty of destroying evidence.

The defendant was the holder of a license from the city of Fond du Lac to sell non-intoxicating beverages in a building opposite the court-house square. In the front of the building is a restaurant, in the center of which is a soft-drink stand. On the second floor there are sleeping rooms, some of which were occupied by roomers and boarders. On May 8, 1924, several prohibition officers entered the building and in the restaurant met the defendant, asked him if he was the proprietor, to which he answered in the affirmative, and informed him that they were state officers and wanted to make an inspection. The officers testified that the defendant had in his hand a bottle of liquid and ran to the stairway; that he was caught by one of the officers, who tried to take the bottle from him; that the defendant spilled and poured some of the liquid upon the floor. The remaining content of the bottle was introduced in evidence and tested 44.75 per cent. alcohol. The defendant testified that this was liquor which had been prescribed by a physician.

Afterward the officers went up a stairway from the soft-drink parlor to the rooms above. On the part of the defendant there was testimony that they found one room which was locked, and broke open the door. According to the officers the defendant was asked to unlock the door, which he did, and it is conceded that they found several gallons of faked and moonshine whisky testing a little more than forty-seven per cent. alcohol. It was the testimony of the defendant and his wife that the room in which the liquor was found was in the exclusive possession and occupancy of the defendant's wife. She testified that she moved the liquor to that room from the room of transient guests and had not advised her husband of that fact. On the part of the State there was testimony that the defendant stated that the bedroom was his.

During the course of the trial counsel for the defendant requested that a view of the premises be taken. In compliance with the request the court suspended the trial till afternoon in order that the view might be taken, instructed the jury before leaving not to talk about the case or permit anybody else to mention it; that the sheriff would take them to look at the place, would take them upstairs if they desired, and that that was all that would be necessary; that they could get the location of the room where it was claimed the liquor was found; that one of the prohibition officers might go with the sheriff and that the defendant and his attorney might go; that there should be no mention of the case in the presence of the jury except to point out the door and the stairway. After the verdict a motion was made on an affidavit of an employee of the defendant to set aside the verdict on account of the misconduct of the jury. The material part of the affidavit is as follows:

"That there accompanied the jury to said premises a prohibition agent named, as this affiant is informed, Parkinson; that said agent, while the jury was on the second floor, entered rooms on the second floor other than the room of

Mrs. Nelson, and searched the same, and that from a bathroom on said floor the said agent took a six-gallon jar containing alleged illicit liquor, commonly known as home brew; that he took the same from said room and to the room of Mrs. Nelson and, in a laughing, mocking, and sneering way, called the attention of the jury to the jar and its contents, and, in the presence of the jury, stated that he was going to take the same from the premises and did, in the presence of the jury, carry said jar from said premises and across the court-house yard in full view of certain members of the jury."

On the hearing of the motion members of the jury were summoned to appear and testify as to the transaction. The prohibition officer testified that he accompanied the jury, went upstairs and opened the doors; that as he entered the building there was a strong odor of stale beer; that as he left the building he took a jar containing a small amount of home-brew beer in the making; that he was the last one out of the building; that although he took the jar from the premises it was not in the presence of the jury; that he did not know that there was any restriction as to viewing the premises. Eleven of the jury-men and jury-women were examined; their attention was called to the contents of the affidavit and each was asked to tell what he or she knew in reference to the conduct of the prohibition agent. Nine testified that they did not see the jar; several testified that they did not see him do anything; one that she did not see him at all. One testified that he did not see the jar until they came out of the building when the prohibition agent had it; several testified that there were several jurors in the bathroom. There was testimony that there was a strong odor and that something was said about pickles. One testified that the prohibition agent, while talking to the sheriff, was laughing, but he did not know what it was about. The counsel for the defendant did not participate in the view, but he saw the sheriff and the prohibition agent crossing the street with a jar, and that as he entered the building he saw

three or four members of the jury walking out.    In passing on the motion the court said:

"I don't think anything occurred which should require the court to set aside this verdict and grant a new trial of the case, Mr. O'Brien.    Of course, I would rather this did not happen.    I don't think it is my fault, and I don't think it is the jury's fault.    The motion for a new trial will be overruled."

The most lengthy and earnest argument contained in the brief for the defendant relates to the alleged misconduct of the jury.    No objection can be made to the fact that a view was taken, since it was made at the request of the counsel for the defendant.    Nor can any objection now properly be made to the fact that the sheriff and the prohibition officer accompanied the jury, since this direction was given in the presence of counsel for the defendant and no objection was made.    It was probably expected that the defendant's counsel would be present when the view was taken.    Probably if he had been present the irregularities now complained of would not have occurred.    It does not appear that there was any mention of the case by the sheriff or the prohibition officer in the presence of the jury.    Two of the irregularities complained of consist in opening the door to the bathroom and in taking the jar away from the premises.    It is true that the opening of the door was not in strict compliance with the directions given by the court, and yet it does not appear that there was any wilful or intentional disobedience, and we agree with the trial judge that the occurrence did not affect the verdict to the defendant's prejudice.

The preponderance of the testimony seems to be that the jar was carried away by the prohibition officer after the jury had left.    There is no evidence that any of the jury knew its contents, and only one or two saw it at all.    It appears from the testimony of the counsel for the defendant that he saw the prohibition officer and sheriff when they were crossing the street with the jar and made some comment on the sub-

ject.   He thus had some notice that in connection with the view something had occurred outside the direction of the court.   No objection was made respecting the view until after the verdict had been rendered.   While this fact did not give him notice of all that had occurred, it is not clear that he did not waive the objections now made by waiting until the verdict had been rendered.   *Wetzler v. Glassner,* 185 Wis. 593, 201 N. W. 740; *Grottkau v. State,* 70 Wis. 462, 36 N. W. 31; *State v. Remen* (Minn.) 200 N. W. 803; 16 Corp. Jur. 1160, 1161; 7 Ann. Cas., note on page 421.

Some suggestion is made that there was a separation of the jury, but the fact that three or four of the jurymen passed out behind the others does not constitute such a separation as, under the authorities, would be ground for a new trial.   Counsel for the defendant rely upon a class of cases in which it has been held that where jurors of their own motion make an inspection of the premises or thing in dispute, a new trial may be granted.   It was so ruled in the case of *Peppercorn v. Black River Falls,* 89 Wis. 38, 61 N. W. 79, and in numerous other cases.   It cannot be said in this case that the trial judge did not give the alleged irregularities serious attention.   On the contrary he thoroughly investigated the subject and came to the conclusion that there was no prejudicial error.   He may have believed that the testimony on the merits concerning the offense charged was so convincing that the jury would have been little influenced if all the statements in the affidavit had been conceded to be true.

Questions of this kind seem to have seldom arisen in this state, but the decision in *Parb v. State,* 143 Wis. 561, 128 N. W. 65, seems quite pertinent.   In that case it is said:

"It appears that during the trial several of the jurymen went to the building where the fire occurred, which it seems was not destroyed but only damaged, and made some examination of it.   This was misconduct on the part of such jurors.   *Peppercorn v. Black River Falls,* 89 Wis. 38, 61

N. W. 79. Such misconduct should not result in reversal of the judgment, however, unless in the opinion of the court it appears that it has affected the substantial rights of the plaintiff in error. Sec. 3072m, Stats. (Laws of 1909, ch. 192). After an examination of the entire record we cannot say that it so appears. The trial judge examined into the matter very carefully and took the testimony of all the jurors and became convinced that such examination of the building had not in any way affected the verdict or prejudiced the plaintiff in error, and we are unable to say that his conclusion was not correct."

We do not consider that the ruling of the trial court should be reversed on this ground.

Error is assigned because the following instruction was given:

"It is not denied that intoxicating liquor was found by the officers in a room so connected with the place of sale of non-intoxicants that it was about such premises within the meaning of the statute, and that this room was in the possession of the defendant, as was the first floor of the building. The possession of such liquor in the room where it was found is *prima facie* evidence of unlawful possession."

There was no denial of the fact that the intoxicating liquor was found on the premises. Under the undisputed proof there could be no denial of the fact that the room where the liquor was found was so connected with the place of sale of soft drinks that the liquor was on the premises within the meaning of the statutes, sub. (30), sec. 165.01. *Walsh v. State,* 180 Wis. 356, 192 N. W. 1004; *Wibmer v. State,* 182 Wis. 303, 195 N. W. 936; *Bombinski v. State,* 183 Wis. 351, 197 N. W. 715. The portion of the instruction which is criticised is the following: "that this room was in the possession of the defendant, as was the first floor of the building. The possession of such liquor in the room where it was found is *prima facie* evidence of unlawful possession." It is not claimed that defendant had any permit for the possession or sale of privately manufactured dis-

tilled liquors. It has been held that moonshine of such alcoholic content as to be intoxicating comes within that class and that the possession of such liquor is an offense. *State v. Smith,* 184 Wis. 664, 200 N. W. 638. The evidence shows that Mrs. Nelson took care of all the rooms and that they were living together in a friendly way as husband and wife. When asked as to this the defendant made the emphatic answer, "Yes. Yes, you bet." The trial judge evidently held as a matter of law that under the facts proven the possession of the room in question was that of the husband and the liquor was on the premises of which he was the proprietor. In this view we concur. To hold otherwise would open the door to such subterfuges and evasions as would make the administration of the prohibition law a farce.

In this connection the issue most sharply contested was whether the defendant knew that the liquor was kept in this room. On this subject the following instruction was given:

"It is contended by the defense that the defendant did not know anything about the presence of this liquor in the room. That it was taken there by his wife without his knowledge from a room vacated by some roomers who left it in their room when they vacated it. If you believe from the evidence that the facts are as contended by the defense, or if from the whole evidence you have any doubt of the facts being as thus claimed, you will acquit of this charge. But if from the whole evidence and the circumstances disclosed by it you believe that this claim is a mere subterfuge, and are satisfied by all the evidence beyond a reasonable doubt that the defendant knew of the presence of the liquor in the room, you will then convict."

This presented a pure question of fact, and under the testimony was quite as favorable to the defendant as he had a right to expect.

The next assignment of error relates to the following instruction:

"As to the liquor in the bottle Exhibit 1, which was taken from the defendant by the officers, I will instruct you that

this liquor was unquestionably intoxicating and unquestion-
ably in the possession of the defendant personally. Being
so in his possession, *prima facie* it was unlawfully in his
possession. The defendant claims that this was what is
called prescription liquor, that is, liquor that had been pre-
scribed for him by a physician. If you believe this, or if
you have any doubt as to its being the fact, you will not find
the defendant guilty of having this liquor unlawfully in
possession, however you may find as to the other liquor, as
the supreme court of the state has ruled that the possession
of such liquor, even in a place licensed to sell non-intoxicants,
is lawful. But if you believe that this claim is a subterfuge,
and are satisfied beyond a reasonable doubt from the circum-
stances in evidence that it was not prescription liquor, you
will then find the defendant guilty of unlawfully having in
possession intoxicating liquor as charged, however you may
find as to the other liquor found in the room."

The only objection to this charge is to the clause "Being so
in his possession, *prima facie* it was unlawfully in his pos-
session." The statute expressly provides that the possession
of liquor of this kind "shall be *prima facie* evidence of un-
lawful possession." Sub. (28), sec. 165.01. In *Bombinski
v. State,* 183 Wis. 351, 197 N. W. 715, it was said: "Like-
wise the evidence is conclusive that defendant had such
liquor in his possession in his dwelling, used in part as a
licensed place for the sale of non-intoxicating liquors. This
was *prima facie* evidence of unlawful possession." It is
argued that the only testimony on this subject was to the
effect that it was medicinal liquor lawfully acquired on a
prescription by a physician; that it was being so used at the
time of the seizure, and that such liquor is a class by itself
under the rule declared in *Chapleau v. State,* 183 Wis. 404,
197 N. W. 176. There is nothing in that decision which
holds that the legislature may not properly declare what
shall *prima facie* constitute an offense, and statutes of that
character are not uncommon. It would be practically im-
possible for the State to prove, in prosecutions of this kind,
that a defendant had no medicinal prescription. Such evi-

Nelson v. State, 186 Wis. 648.

dence is peculiarly within the knowledge of the defendant, and it is the meaning of the statutes, if such proof is relied upon, that the defendant should produce it. See cases in 36 L. R. A. (N. S.), note on pp. 104–108. The issue on this subject was purely a question of fact and was presented to the jury by a fair instruction. The defendant was arrested within a few minutes after he said he had taken the whisky out of the prescription bottle as he claimed. He retained his attorney the same day, but the bottle was not produced. There were inconsistencies in the testimony of the defendant and his wife, and we consider that the verdict on this question was sustained by the evidence.

We also think that the finding that the defendant destroyed liquor for the purpose of preventing seizure by the officers was supported by the evidence.

*By the Court.*—Judgment affirmed.