PRISKE, Plaintiff-Respondent and Cross-Appellant, v. GENERAL MOTORS CORPORATION, and another, Defendants and Cross-Respondents: DROTT TRACTOR COMPANY, INC., Defendant-Appellant.†

Supreme Court

*No. 76–658. Argued April 30, 1979.—*
*Decided May 30, 1979.*
(Also reported in 279 N.W.2d 227.)

† Motions for reconsideration denied, without costs, on June 29, 1979.

644

646

For the appellant there were briefs by *David M. Quale, Douglas H. Starck* and *Prosser, Wiedabach & Quale, S. C.* of Milwaukee, and oral argument by *David M. Quale.*

For the respondent and cross-appellant there was a brief and oral argument by *Frank M. Coyne* of Madison.

For the cross-respondents there was a brief by *Eugene O. Gehl* and *Axley, Brynelson, Herrick & Gehl,* attorneys, of Madison, and *Otis M. Smith, Douglas E. Brown,* of counsel, General Motors Corporation, Detroit Michigan, and oral argument by *Eugene O. Gehl.*

SHIRLEY S. ABRAHAMSON, J.  William H. Priske commenced this action for personal injuries incurred when the brakes of a front-end loader failed and Priske was pinned against a crusher.  The front-end loader was designed and manufactured by Terex Earth Moving Equipment Division, General Motors Corporation (GM). It was delivered in 1967 or 1968 to Drott Tractor Co. (Drott), a GM dealer.  Drott rented the front-end loader for a time, later rebuilt it under GM supervision,[1] and

---

[1] Carl Sommer, in charge of Drott's department that rebuilt the loader before its sale to Construction Supply, testified that the

then sold it in November 1970 to Construction Supply Company, Priske's employer. The jury found that the loader was not in a defective condition, unreasonably dangerous to persons, when it left the possession and control of the manufacturer (GM) or the seller (Drott). The trial court changed the jury's answer with regard to Drott, finding that the loader was in a defective condition unreasonably dangerous when it left the possession and control of Drott and that this defect was a cause of the injury. The trial court consequently entered judgment for Priske against Drott in the amount of $199,547.02 and granted GM's motion for judgment on the verdict in favor of GM. We reverse that part of the judgment relating to Drott and vacate that part of the judgment relating to GM.

## I.

The front-end loader involved in the instant case is a 1967 large heavy-duty four-wheel machine used off the road in the construction and earth moving industries. At the front of the machine is a sizable scoop or bucket which can be raised or lowered by means of a hydraulic lift operated by the driver, who sits in a cabin atop the machine.

The loader has a hydraulic brake system in which pressure applied by the machine operator's foot on the floor brake pedal is conveyed to the four wheels in the following manner. The pedal is linked to a piston or plunger that enters a brake reservoir (the master cylinder) filled with a viscous oil. When the plunger is pushed into the reservoir by means of pressure on the pedal, it forces oil from the reservoir through four series of lines and fittings into four brake drums or

---

only change made in the braking system during the rebuilding was to put heavier brake backing plates in each wheel. Otherwise the brake system was kept the same.

cylinders, one attached to each wheel. The pressure of the oil then forces the brake shoes against the brake cylinders, causing the wheels to stop. The brake is an "air over hydraulic system," that is, the operator does not have to rely solely upon his or her foot pressure to work the brake, but also has the aid of pressure from an air compressor. When the operator depresses the brake pedal, compressed air is released and forced against the plunger entering the brake reservoir.

From the date of purchase until the injury, Drott used the front-end loader for a number of jobs: at a gravel pit feeding gravel to a gravel crusher or breaker for use in Construction Supply's asphalt operation; plowing snow; loading trucks; and digging holes.

A few days before the injury on May 17, 1971, the loader was moved to a gravel pit to help relocate and set up a crushing machine, and Alvin Brandenburg was hired to operate the loader during that project. Among Brandenburg's duties was the checking of the oil level in the master brake reservoir. He testified that he checked the reservoir on the day of the accident and several days preceding the accident, finding the reservoir 70 to 80 percent full each day. There appear to have been no complaints regarding the functioning of the brakes before the day of the injury.

On the day of the injury three Construction Supply workers were present at the gravel pit: Priske, Brandenburg, and John Davis. They were building a ramp upon which the loader could ascend to a suitable position for unloading gravel into the crusher. The ramp was being constructed of telephone poles, rocks and gravel. Brandenburg operated the loader and made a number of trips down a hill carrying telephone poles to the site of the ramp. Then he began bringing gravel down the hill to the site of the ramp, as Davis and Priske set the poles in place and shoveled the gravel in around the poles. Brandenburg would back the loader up the hill,

away from the crusher and ramp, swing to one side to pick up gravel in the scoop of the loader, and then the loader would descend the hill with the front end of the loader facing the ramp. At a distance of 20–30 feet from the ramp, Brandenburg would brake the loader and wait for Priske and Davis to signal him to come ahead. When the ramp was half done and Brandenburg had made about 50 trips for gravel, he found that while descending the hill the brakes would not stop the loader. Priske and Davis were working on the ramp in front of the loader. Davis heard the loader's engine, shouted and jumped to one side. Priske, in the path of the loader, attempted to jump into the loader's bucket just as Brandenburg began to lift the bucket in order to avoid smashing Priske. Priske's right leg was caught between the bucket and the side of the gravel crusher. The leg had to be amputated above the knee.

After the accident Brandenburg checked the brake reservoir and could see no fluid. The next day William Frank, a field service mechanic for Drott, inspected the loader at the spot where it had been left after the injury. He found the brake reservoir empty, but after making a careful check of all the lines and fittings in the brake system, he could find no signs of a leak. He then filled the reservoir and bled the brake system, finding a few air bubbles. He drove the loader retracing Brandenburg's moves in getting gravel the previous day, and then gave the brakes an additional fifteen minutes of testing. He again checked the brake system, finding the reservoir still full; there was no sign of a leak or of damage or of tampering.

Construction Supply put the loader back into operation. Construction Supply contends that during the summer of 1971 it experienced continued problems with loss of brake fluid, that it complained to Drott, and that at various times it added fluid to the reservoir but detected

no leak. Construction Supply claims that late in 1971 it discovered a leak over the left rear wheel by use of red dye placed in the brake reservoir. Construction Supply took the loader to Drott; Drott's service report for December 1971 shows that the left front wheel was removed and brake shoes replaced. Drott's service reports do not show any complaints about the brakes.

The case went to the jury on a set of special verdict questions based on the theory of strict liability. In its verdict the jury gave the following answers to questions 1 through 4:

"QUESTION NO. 1: At the time the front end loader left the possession and control of the defendant General Motors Corporation, was it in a defective condition unreasonably dangerous to persons?
"ANSWER: No.
"QUESTION NO. 2: If you answered Question 1 'Yes,' then answer this question:
"Was such condition a cause of the accident?
"ANSWER: ———
"QUESTION NO. 3: At the time the front end loader left the possession and control of the defendant Drott Tractor Co., Inc., was it in a defective condition unreasonably dangerous to persons?
"ANSWER: No
"QUESTION NO. 4: If you answered Question 3 'Yes,' then answer this question:
"Was such condition a cause of the accident?
"ANSWER: ———"

The jury apportioned 5 percent causal negligence to Priske, 50 percent to Construction Supply, Inc., and 45 percent to Brandenburg, and found that Priske had sustained damages from the accident totaling $210,049.50. Upon motion after verdict by Priske, the trial court ordered that the answer to Question No. 3 be changed to "Yes" and that Question No. 4 be answered "Yes," but it denied Priske's motion to change the answer to

Question No. 1 from "No" to "Yes." The trial court then entered judgment for Priske against Drott in the amount of $199,547.02.

## II.

Drott contends that the evidence does not warrant the trial court in changing the answer to verdict questions 3 from "No" to "Yes." Drott correctly states that sec. 805.14(1), Stats., sets forth the test the trial court must use in reviewing the sufficiency of the evidence on motions after verdict:

"805.14 **Motions challenging sufficiency of evidence; motions after verdict.** (1) TEST OF SUFFICIENCY OF EVIDENCE. No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party."

This standard is also applied by this court on appeal. *Chart v. General Motors Corp.*, 80 Wis.2d 91, 110, 258 N.W.2d 680 (1977); *Lehman v. Sentry Ins. Co.*, 35 Wis.2d 96, 98, 150 N.W.2d 333 (1967).

The issue is therefore whether there is any credible evidence to sustain the jury's answer to Question No. 3, considering all the credible evidence and reasonable inferences therefrom in the light most favorable to Drott. If there is such credible evidence, or favorable reasonable inferences therefrom, neither the trial court nor this court may change the jury's answer or findings. Resolving the issue presented necessitates a review of the evidence. *Lehman v. Sentry Ins. Co.*, 35 Wis.2d 96, 98, 150 N.W.2d 333 (1967).

Question No. 3 inquired whether at the time the end-loader left the possession and control of Drott it was in a "defective condition unreasonably dangerous to persons." The jury was instructed on the elements that a plaintiff must establish in a product liability case. In *Dippel v. Sciano*, 37 Wis.2d 443, 460, 155 N.W.2d 55 (1967), this court said:

"From a reading of the plain language of the rule [Restatement, Torts 2d, sec. 402A], the plaintiff must prove (1) that the product was in defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it."

Regarding the question whether any credible evidence supported the jury's determination that the loader was in a defective condition when it left the possession or control of Drott, the trial court reasoned:

"All of the evidence supports one of two conclusions: at the time Construction Supply received the front-end loader from Drott the brake system either had a leak or a leak developed sometime during its 272 hours of use prior to the accident. If the front-end loader had a slow leak at the time of its delivery, as a matter of law, the loader was patently defective. If a leak developed within 272 hours of ordinary use in the absence of damage or tampering, the loader must have had a latent defect."

The trial court points out in reaching these conclusions that it is undisputed that the loader's brakes failed; that

shortly after the accident, inspections by Brandenburg and Frank revealed that the brake reservoir was empty of brake fluid; that brake fluid does not evaporate significantly and is not consumed during the braking process; and that no leak, tampering or damage to the brake system was found by Frank the day after the injury.

The trial court apparently concluded that these undisputed facts required the inference that the loader's brake system was in a defective condition unreasonably dangerous when it left Drott's possession and control. We disagree with the trial court's analysis. We conclude that there is credible evidence to support the jury's answer, namely that at the time the loader left Drott's possession and control it was not in a defective condition unreasonably dangerous to persons. We conclude that a jury could infer from the record that the loader's brake system was not in defective condition when it left Drott's control but was damaged during the six-month period it was used by Construction Supply and that this damage caused the brake failure, not a "patent" or "latent" defect attributable to Drott (to use the trial court's terminology).

No direct evidence was introduced purporting to establish the existence of either a defective condition while the loader was in Drott's possession or damage to the loader after it left Drott's possession. Nonetheless the jury may draw an inference from circumstantial evidence as to whether the reservoir was empty as the result of the loader being in defective condition or as a result of damage the loader received after leaving Drott. *Jagmin v. Simonds Abrasive Co.*, 61 Wis.2d 60, 73, 74, 211 N.W. 2d 810 (1973).

Carl Schneider, a staff engineer of Terex, testified that because the loader was normally used for carrying heavy materials on rough terrain, it was more likely

to be damaged in normal use than an automobile was. He stated that it was not unusual or unanticipated that a loader's brake system could develop a leak during normal use. The jury could infer from this testimony that a probable cause of the loss of fluid from the brake reservoir was damage suffered by the brake system during normal use by Construction Supply.

Frank, a field service man for Drott, testified that he examined the loader's brake system the day after the accident. He stated that he "made a careful visual inspection from the underside of the machine starting at the master cylinder, all connections, all lines to the front and rear axles to a point where they junctioned with the cylinders, at those connections, at the base of the brake drum where if there was an internal leak from the wheel cylinders, it would show a moist area on the drums, and around the master cylinder area itself and the complete power cluster." After using the loader's brakes for about half an hour, Frank repeated his examination of the loader's brake system. In examining the fittings, Frank testified, he used a flashlight; he tested the fittings with a wrench to determine whether they had become loose, although he admitted that some of the fittings were inaccessible and could not be reached with a wrench. Frank stated that during this examination he found no sign of a leak and no sign of damage to the loader or tampering with the loader. He testfied that there had to be an "invisible" leak somewhere in the brake system.

Frank stated that his examination would not have uncovered an "invisible" leak. No evidence was introduced, and the jury need not infer, that if a leak was caused during the loader's use by Construction Supply, the leak would have to be "visible" during Frank's inspection. Frank admitted that during his examination of the loader he did not take off the wheels and he did not test all of the fittings with a wrench.

Dennis Skogen, an expert witness, testified that the fluid would not have been lost from the brake reservoir unless there had been a defect in the brake system at the time the loader left Drott's possession and control. He testified that by "defect" he meant a condition such as a loose fitting, an improperly seated fitting, or an improperly installed or torn seal. Skogen conceded he did not know where the leak was, when it started or what caused it.

██ This testimony presented the jury with a close question. In deference to the trier of fact, the jury, we must consider the evidence in the light most favorable to the verdict and must ask whether there is any credible evidence to sustain the verdict. We conclude that there was credible evidence in the record from which the jury could find that the loader was not in defective condition unreasonably dangerous to persons when it left Drott's possession and control.

Priske contends that if the loader was susceptible to damage from an external source that could cause such a loss of brake fluid, then the loader must have been in a defective condition unreasonably dangerous to persons when it left Drott. Priske's contention is tantamount to saying that a loader is in a defective condition and unreasonably dangerous if it is not immune to damage during normal use. We do not believe that this standard is required by products liability law.

██ An "unreasonably dangerous" defect for products liability purposes is discussed in comment *i* to sec. 402A, Restatement (Second) of *Torts* (1966):

". . . The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

Carl Schneider, a staff engineer of Terex, testified that due to the pounding a loader took, leaks in the brake system were expected and the manual recommended daily checks for leaks from the brake system or for wheel seal leaks.

The jury might reasonably have concluded that the loader's susceptibility to damage during use was within the reasonable expectation of the ordinary user of the loader, possessing the knowledge of the loader that such a user would have. *Vincer v. Esther Wms. All-Alum. S. Pool Co.*, 69 Wis.2d 326, 332, 230 N.W.2d 794 (1975); *Arbet v. Gussarson*, 66 Wis.2d 551, 556, 557, 225 N.W.2d 431 (1975).

Because there was credible evidence which, taken in the light most favorable to Drott, would sustain the jury's finding that the loader was not in defective condition unreasonably dangerous at the time it left Drott's possession and control, the trial court erred in changing the jury's answer to Question No. 3.[2]

### III.

In post-verdict motions Priske challenged the sufficiency of the evidence to sustain the jury's determination, in its answer to Question No. 1, that when the loader left the possession and control of GM, it was not in a defective condition unreasonably dangerous to persons. Priske cross-appeals from the trial court's order denying his motion challenging the sufficiency of the evidence and cross-appeals from that part of the judgment which dismissed his complaint against GM on the merits.

[2] In view of our conclusion, it is unnecessary to reach other issues raised by Drott, *e.g.*, that the trial court had no authority to issue its decision or to enter the orders and judgment because they had not been entered within ninety days after verdict. Sec. 805.16, Stats.

On appeal Priske contends that GM's design of the brake system in the loader was defective and unreasonably dangerous in three respects: (1) There was no warning device in the cab of the loader to warn the operator of the loss of brake fluid; (2) the loader had a single-circuit, not a dual-circuit, brake system; (3) the loader had no emergency hand-operated brake.

As we have stated previously, on appeal the issue is whether there is any credible evidence in the record to sustain the jury's answer, sec. 805.14, Stats., *supra,* and we must review the evidence.

As to the warning device for brake fluid level, Carl Schneider, a staff engineer for Terex, testified that a warning device, observable by the operator in the cab, was not feasible in loaders because of the pounding those machines take. On the basis of this testimony, the trial court properly concluded:

"The absence of a warning indicator for low levels of brake fluid was both obvious and technologically questionable. Subsequent sensor and circuit developments did permit the installation of such devices on later models of equipment. The testimony of Mr. Carl Schneider, an engineer called by General Motors, indicated that the theoretical ability to implement such a sensor existed in 1967 but the practical technology for reliable sensors on earth moving equipment was not yet developed. Therefore the jury could conclude that the absence of such sensors was not a defect."

As to the brakes, the loader that caused the accident in the instant case had a single-circuit system, *i.e.,* one master brake reservoir fed brake fluid to all four wheels, and a leak from any place in that system would deprive the loader of braking power for all four wheels. By contrast a dual system would have two independent circuits, one for the rear wheels and another for the front

wheels. A leak in one of the two circuits would leave the other intact.

Priske contends that General Motors cars and loaders designed by other companies had dual brake systems in 1967, and therefore it was a defect for the loader at issue not to have had a dual-brake system in 1967. Priske also contends that a dual circuit brake system should have been installed in the loader when it was rebuilt by Drott under GM supervision.

Carl Schneider testified that dual systems were available in General Motors automobiles in 1967–1968, but they were not incorporated in loaders until 1968–1969. Schneider explained that it took longer to develop a dual system for loaders than for cars, because of the greater weight of loaders and the harder use to which they are put. William Frank, a Drott field serviceman, stated that installing such a system when the loader was rebuilt would have cost over $1,500 in parts and labor.

■

Whether the single-circuit brake system in the original or in the rebuilt loader constituted a defect which was unreasonably dangerous was a question for the jury. The jury's finding that there was no defect is supported by credible evidence in the record.

As to the emergency brake, Schneider testified that the loader had a foot-operated emergency brake, which also served as a parking brake. Movies were shown to the jury of tests performed on the loader by Schneider to determine the distance within which the loader could be stopped by the emergency brake. Schneider testified that the tests showed that if Brandenburg had applied the emergency brake when he was 20 feet from Priske, at the speed he was going, he could have avoided the accident. Brandenburg testified that at the time of the accident he did not know the location of the emergency brake.

Schneider testified that the loader's brake system, including the emergency brake, as manufactured in 1967, met·the standards adopted by the Society of American Engineers (SAE) for off-highway, rubber-tired loaders and bulldozers.

Priske contends that an emergency brake which had to be operated by the same foot that operated the regular brake was inadequate. He argues that an operator will not abandon the foot-operated regular brake to engage the emergency brake and that the absence of a hand-operated emergency brake constitutes a defect.

Again, whether a foot-operated rather than a hand-operated emergency brake constitutes a "defective condition unreasonably dangerous to persons" is a question for the jury, and the jury's finding is supported by credible evidence in the record.

Priske also moved for a new trial and cross-appealed from the trial court's order denying his motion for a new trial.

Section 805.15(1) and (2), Stats., relating to the granting of a new trial by the trial court, provides:

"805.15 New trials. (1) MOTION. A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice. Orders granting a new trial on grounds other than in the interest of justice, need not include a finding that granting a new trial is also in the interest of justice.

"(2) ORDER. Every order granting a new trial shall specify the grounds therefor. No order granting a new trial shall be valid or effective unless the reasons that prompted the court to make such order are set forth on the record, or in the order or in a written decision. In such order, the court may grant, deny or defer the awarding of costs."

Priske asserts that the jury's answer to Question No. 1 is contrary to law because two jury instructions were incorrect.

The record does not show that Priske made any objection to these instructions until his post-verdict motion for a new trial. This court has said that

". . . under the usual rules of appellate procedure, an objection to incomplete or imperfect instructions comes too late when asserted for the first time after the jury's verdict has been returned. We have, however, consistently held that, when an instruction misstates the law, error can be aserted for the first time after the verdict is returned and on motions for a new trial. . . . [A]n instruction misstates the law if it is not appropriate to the facts in the case." *Lemberger v. Koehring Co.,* 63 Wis.2d 210, 224, 225, 216 N.W.2d 542 (1974).

*See also Heldt v. Nicholson Mfg. Co.,* 72 Wis.2d 110, 116, 117, 240 N.W.2d 154 (1976). We have reviewed the two jury instructions. They do not misstate the law; they are appropriate to the facts of the case.

On appeal Priske objects to the instruction containing the following language from Wis. J I—Civil 3260:

"A defective product is unreasonably dangerous to the user or consumer when it is dangerous to an extent beyond that which would be contemplated by the ordinary user possessing the knowledge of the product's characteristics which were common to the community."

Priske asserts that the language of Wis. J I—Civil 3260 is "too bland" because it "permits a jury to believe that if a user *could* contemplate that a leak would occur, then it [the product] is not defective or unreasonably dangerous. Analyzing this, we *can* contemplate that a leak might occur in pretty near anything." (Emphasis added.)

However Priske's objection unwarrantedly substitutes "could" for the word "would" contained in Wis. J I—Civil 3260.

The second instruction to which Priske objects is the following:

"There are some products which, in the present state of human knowledge are quite incapable of being made safe for their intended and ordinary use. The seller of such products is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

Priske claims that this instruction is not appropriate to the facts in the case because the evidence was clear that General Motors had "the mechanical know-how" to put dual-circuit brakes and a hand-operated emergency brake on its loaders but failed to do so. We have reviewed the record, and we conclude it was for the jury to determine the feasibility of putting dual-circuit brakes and a hand emergency brake on the loader.

We conclude that there was no error in the instructions.

Priske also moved for a new trial because the verdict is contrary to the weight of the evidence and in the interest of justice. A new trial may be granted in the interest of justice when the jury's findings are contrary to the great weight and clear preponderance of the evidence even though the findings are supported by credible evidence. *Krolikowski v. C & N Trans. Co.* Slip Opinion, May 30, 1979, pp. 4–5.

The legislature vested the discretion of granting a new trial in the interest of justice in the trial court.

The trial court's ruling on a motion for a new trial is highly discretionary and will not be reversed on appeal in the absence of a showing of abuse of discretion. *Chille v. Howell,* 34 Wis.2d 491, 494, 149 N.W.2d 600 (1967); *DeGroff v. Schmude,* 71 Wis.2d 554, 238 N.W.2d 730 (1976).

The function of this court is not to exercise discretion in the first instance but to review the exercise of discretion by the trial court. In cases which did not involve a motion for a new trial, we have said that the trial court's exercise of discretion without demonstrating consideration of any of the factors on which the decision should be properly based constitutes an abuse of discretion. Under such circumstances we have upheld the discretionary decision of the trial court if, from the record, we can conclude *ab initio* that there are facts of record which could support the trial judge's decision had discretion been exercised on the basis of those facts. *Maier Const. Inc. v. Ryan,* 81 Wis.2d 463, 473, 260 N.W.2d 700 (1977). We have also said that where the trial court has expressly decided not to exercise its discretion, this court would not exercise the discretion vested in the trial court. *State ex rel. Carl v. Charles,* 71 Wis.2d 85, 93, 237 N.W.2d 29 (1975).

The trial court in the case at bar denied Priske's motion for a new trial in the interest of justice against GM, stating:

"Finally, the plaintiff [Priske] argues for a new trial in the interest of justice.

"From the foregoing discussion, the court will not order a new trial. The jury's clearly erroneous finding that the front-end loader was not dangerously defective at the time Drott Tractor Company delivered the machine to Construction Supply has been corrected.

"Therefore judgment on the verdict shall be entered for defendant, General Motors . . . ."

It is not clear from the above-quoted language from the trial court's memorandum decision whether in denying the motion the trial court was exercising its discretion or declining to exercise its discretion on the premise that judgment would be entered against Drott. As previously stated, this court has reversed the judgment against Drott and has remanded the cause to the trial court with instructions to dismiss the complaint against Drott on its merits.

In view of the highly discretionary nature of the trial court's function in deciding whether to grant a new trial in the interest of justice, we conclude that in the case at bar we should remand the cause to the trial court to exercise its discretion. Accordingly, we vacate that part of the judgment and that part of the order dated January 21, 1977, granting GM's motion for judgment on the verdict and dismissing Priske's complaint against GM, and we remand the matter to the trial court to determine whether a new trial should be granted as to GM.

*By the Court.*—Order extending the time for rendering a decision; order dated January 21, 1977, denying defendant-appellant's motion for judgment on the verdict and order dated March 22, 1977, denying defendant-appellant's motion to vacate the judgment and to dismiss the complaint on the ground that the trial court failed to enter an order on motions after verdict within ninety days of the receipt of the verdict, affirmed. That part of the judgment against the defendant-appellant is reversed, and cause is remanded with directions to dismiss the complaint against defendant-appellant on its merits. Order and that part of the judgment granting defendants-cross-respondents' motion for judgment on the verdict and dismissing the complaint as to defendants-cross-respondents are vacated.

The following memorandum was filed June 29, 1979.

PER CURIAM *(on motion for reconsideration).* In the memorandum in support of the motion for reconsideration, Priske (plaintiff-respondent and cross-appellant) maintains that the determination to be made by the trial court on remand as to whether a new trial should be granted in the interest of justice should include both Drott and General Motors, and not solely GM as was mandated on the original appeal. We agree. The trial court clearly never acted on the plaintiff's alternative motion for a new trial with respect to Drott because it ruled in favor of the plaintiff on the motion to change the jury answer to the special verdict question concerning whether the loader was in a defective condition when it left Drott from "No" to "Yes."

The language in the opinion which declares that the court "has remanded the cause to the trial court with instructions to dismiss the complaint against Drott on its merits" is withdrawn. That part of the mandate which provides that the "cause is remanded with directions to dismiss the complaint against defendant-appellant on its merits" is likewise withdrawn. We remand the matter to the trial court to determine whether a new trial should be granted as to both GM and Drott. The other arguments advanced by Priske in support of reconsideration as well as those put forward by GM in a separate motion for reconsideration filed with this court merely repeat arguments previously advanced and reiterate evidence considered in the original appeal and, as such, do not warrant reconsideration.

Motions for reconsideration are denied without costs.