AFTER HOUR WELDING, INC., Plaintiff-Respondent,

v.

LANEIL MANAGEMENT CO., and Shoreland Manor Co., Defendants-Appellants.†

Court of Appeals

No. 80–1246. Submitted on briefs July 15, 1981.— Decided October 19, 1981.

(Also reported in 312 N.W.2d 859.)

† Petition to review granted.

For the defendants-appellants the cause was submitted on the brief of *M. L. Eisenberg & Associates* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Poulos, Sengstock & Wilkoski, S.C.,* and *John J. Kastl* of West Allis.

Before Decker, C.J., Cannon, J., and Hanley, Reserve Judge.

DECKER, C.J.  Did the trial court err in denying the defendants' motion for a new trial due to alleged misconduct of the jury? We conclude that the issue is governed by sec. 906.06(2), Stats., and that neither the affidavit nor the hearing conducted by the trial court satisfy the public policy requirements of the statute. We affirm.

A jury trial resulted in a verdict for the plaintiff against the defendant corporations. Sydney Eisenberg was an officer of the defendant corporations and testi-

fied at trial. Before motions after verdict, defendants moved for a new trial claiming jury misconduct.[1] The motion was supported by the affidavit of a dissenting juror that:

During the course of the trial and during the time of my service on the jury I heard other jurors say:

1. Mr. Eisenberg is "a cheap Jew."

2. Alan Eisenberg, Mr. Sydney Eisenberg's son, defended the Outlaws. The tone and the attitude of the statement about Alan Eisenberg was derogatory.

3. "They" (Alan and Sydney) were involved in the suicide of Judge Krueger. The tone and attitude conveyed the idea that this was something bad the Eisenbergs had done.

The trial court rejected the motion and entered judgment on the verdict.

Defendants appeal, contending that the affidavit establishes that jurors were untruthful during voir dire, and that the alleged statements prejudiced the jury.

## VOIR DIRE

Defendants contend that the affidavit shows that jurors were untruthful because they allegedly failed to affirmatively respond to an inquiry on voir dire with respect to knowledge of Sydney Eisenberg. We reject this contention because the trial court has not found that such an inquiry was made. The record suggests that the voir dire was not recorded and, in any event, if recorded it has not been transcribed and incorporated in the record transmitted to this court.

---

[1] When this appeal was originally considered, we remanded to the trial court because the reporter's notes of the hearing on the motion for a new trial had been lost. We sought the trial judge's view on what had transpired. We now have a transcript of the hearing on remand.

## IMPEACHMENT OF JURY VERDICT

Defendants contend that a new trial must be granted because the affidavit establishes that the verdict was the product of juror prejudice and matters outside the record.

The rule against a juror impeaching his own verdict dates from the eighteenth century, *Vaise v. Delaval*, 1 T.R. 11, 99 Eng. Rep. 944 (K.B. 1785), and testimony as to extraneous information and improper outside influences on the jury has historically been considered incompetent evidence. Wisconsin has recognized the rule since at least 1855. *Quarles v. State*, 70 Wis. 2d 87, 91, 233 N.W.2d 401, 403 (1975) (citing *Birchard v. Booth*, 4 Wis. 85 (*67) (1855)). Based on public policy reasons, including prevention of the harassment of jurors, the rule insures the jury's freedom of discussion during deliberations, prevents jury tampering, encourages finality of verdicts, and avoids a deluge of meritless post-verdict applications based on alleged juror misconduct. *McDonald v. Pless*, 238 U.S. 264, 267–68 (1915); *King v. United States*, 576 F.2d 432, 438 (2d Cir.), *cert. denied*, 439 U.S. 850 (1978); *United States v. Wilson*, 534 F.2d 375, 378 (D.C. Cir. 1976); *Government of Virgin Islands v. Gereau*, 523 F.2d 140, 148 (3d Cir. 1975), *cert. denied*, 424 U.S. 917 (1976). The desire to avoid injustice and redress the grievances of private litigants competes against the rigid application of this rule of incompetency. *McDonald, supra,* 238 U.S. at 268–69; *Wilson, supra,* 534 F.2d. at 378–79.

Section 906.06 (2), Stats., governs attempts to impeach a verdict through the use of juror affidavits or testimony:

(2) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's delibera-

tions or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received.

This statute is virtually identical to Rule 606(b) of the Federal Rules of Evidence, which codifies the common law as it has developed in many jurisdictions. *United States v. Marques,* 600 F.2d 742, 746–47 (9th Cir.), *cert. denied,* 444 U.S. 1019 (1979). Before the adoption of sec. 906.06(2), Stats., the Wisconsin common law was more restrictive.[2] We look to interpretations of Rule 606(b) for interpretive assistance.

Like F.R.E. 606(b), sec. 906.06(2), Stats., attempts to accommodate the policies for and against impeachment of jury verdicts by an exception to the incompetency rule for juror testimony about extraneous information and improper outside influences; it prohibits inquiries into the mental processes of the jurors, but allows juror testimony relating to overt acts, occurring inside or outside the jury room, which may be within the knowledge of others. *See Marques, supra,* 600 F.2d at 747; *Poches v. J.J. Newberry Co.,* 549 F.2d 1166, 1169 (8th Cir. 1977) (per curiam); *United States v. Eagle,* 539 F.2d 1166, 1170 (8th Cir. 1976), *cert. denied,* 429

---

[2] Judicial Council Committee's Note, 59 Wis. 2d R166:

Thus s. 906.06(2) broadens the opportunity for attack upon allegedly improper jury verdicts or indictments. Although the Federal Advisory Committee Note disclaims a change in substantive law, nevertheless a change occurs in Wisconsin substantive law applicable to setting aside verdicts for irregularity because the competency of a juror's testimony, the source of knowledge of impropriety and the challenge to the verdict are interwoven.

U.S. 1110 (1977) ; *United States v. Grieco*, 261 F.2d 414, 415 (2d Cir. 1958), *cert. denied*, 359 U.S. 907 (1959). A juror may also testify as to the occurrence of improper influences or the presence of extraneous prejudicial information, but may not testify as to the effect these had on the jurors. *Mattox v. United States*, 146 U.S. 140, 149 (1892) ; *Owen v. McMann*, 435 F.2d 813, 819 (2d Cir. 1970), *cert. denied*, 402 U.S. 906 (1971) ; *State v. Kociolek*, 20 N.J. 92, 118 A.2d 812, 816 (1955). This distinction recognizes the practical difficulty of proving the actual effect of such misconduct on the jurors' minds, in light of the difficulty of recreating even one's own thought processes, let alone those of others. *Kociolek, supra*, 118 A.2d at 816. The overt facts to which a juror may testify include misconduct by the jurors themselves. *McMann, supra*, 435 F.2d at 819–20.

A motion for a new trial is directed to the discretion of the trial court and will not be disturbed on appeal absent a showing that the trial court abused its discretion. *Priske v. General Motors Corp.*, 89 Wis. 2d 642, 662–63, 279 N.W.2d 227, 236 (1979) ; *Ballas v. Superior Mutual Insurance Co.*, 13 Wis. 2d 151, 154, 108 N.W.2d 192, 193 (1961). If the trial court proceeds on an erroneous view of the law or fails to demonstrate consideration of appropriate factors for the exercise of its discretion, then that is itself an abuse of discretion. *Priske, supra*, 89 Wis. 2d at 663, 279 N.W.2d at 236; *Ballas, supra*, 13 Wis. 2d at 154, 108 N.W.2d at 193. To impeach a verdict by attacking a juror's fairness, the party must produce clear and convincing evidence. *Van Matre v. Milwaukee Electric Railway & Transport Co.*, 268 Wis. 399, 410, 67 N.W.2d 831, 836 (1955). Because jurors are incompetent to testify with respect to their mental deliberations, direct evidence with respect to the effect of bias, prejudice or other misconduct will seldom be admissible. Thus, the prejudice to the moving party will

usually be a question of law which is not accorded deferential review by this court.

Federal applications of the rule appearing in sec. 906.06(2), Stats., have held that the party attempting to overturn a verdict by the use of juror testimony or affidavit must show that:

(1) the evidence is competent within the meaning of the rule;
(2) the evidence is sufficient to provide substantive grounds on which to set aside the verdict; and
(3) prejudice to the moving party resulted from the misconduct.

*Blake v. Cich,* 79 F.R.D. 398, 402–03 (D. Minn. 1978).[3] Thus, there are evidentiary and substantive law requirements to be met. These requirements overlap and courts have not always recognized the distinction between the substantive and evidentiary questions. *Gereau, supra,* 523 F.2d at 150.

We conclude that these requirements should be met by a party attempting to overturn a verdict pursuant to sec. 906.06(2), Stats., and therefore address the evidentiary and substantive questions in considering the juror's affidavit filed in this case.

## RELIGIOUS PREJUDICE

Appellant alleges that religious prejudice appeared in the trial when one juror remarked that Mr. Sydney Eisenberg was "a cheap Jew." Although "cheapness" is

---

[3] *See also United States v. Eagle,* 539 F.2d 1166, 1169–70 (8th Cir. 1976), *cert. denied,* 429 U.S. 1110 (1977); *Government of Virgin Islands v. Gereau,* 523 F.2d 140, 148 (3d Cir. 1975), *cert. denied,* 424 U.S. 917 (1976); *Tobias v. Smith,* 468 F. Supp. 1287, 1290 (W.D. N.Y. 1979); *Smith v. Brewer,* 444 F. Supp. 482, 487 (S.D. Iowa), *aff'd,* 577 F.2d 466 (8th Cir.), *cert. denied,* 439 U.S. 967 (1978).

a subjective judgment that ranges from the spendthrift's view of frugality to the miser's view of generosity, in context the phrase "a cheap Jew" is a stereotyped appeal to religious prejudice that should not be permitted to be considered by jurors in the discharge of their oaths to give a true verdict according to the law and the evidence given in court. Sec. 895.39, Stats.

We assume for the purposes of this discussion that this allegation involves an overt action to which a juror is competent to testify under sec. 906.06(2), Stats.[4] When jurors manifest religious, racial, ethnic, or sexist prejudices by overt acts, courts have considered this grounds for a new trial and allowed juror testimony concerning these acts, though not their effect.[5]

Nonetheless, courts have encountered difficulty in determining whether allegations of jurors' prejudicial remarks based on race, religion, or other similar factors are competent testimony of overt acts, or incompetent testimony of mental processes. The difficulty stems from separating the objective act of making the remark from its subjective effect. *Tobias v. Smith,* 468 F. Supp. 1287, 1290 (W.D. N.Y. 1979); *Smith v. Brewer,* 444 F. Supp. 482,

---

[4] We necessarily are limited to an assumption for discussion purposes because the affidavit inadequately describes the specific claimed misconduct.

[5] We are aware of our supreme court's decision in *Becker v. West Side Dye Works,* 172 Wis. 1, 177 N.W. 907 (1920), in which the court refused to reverse a verdict for the defendant despite a juror's affidavit reciting that other jurors had referred to plaintiff as "a Jew, a crook, and a liar . . . ." *Id.* at 5, 177 N.W. at 908. It is not entirely clear whether the court concluded that the affidavit did not state grounds sufficient for a reversal or whether the court simply found the affidavit incompetent. The court further observed that it could not consider an affidavit stating that the jurors did not understand the legal effect of their answers because verdicts could not be so impeached. *Id.* at 6, 177 N.W. at 908. Thus, a careful reading of the entire passage indicates that it was more likely the court simply considered the allegations of prejudice as incompetent.

489–90 (S.D. Iowa 1978).[6] Despite this difficulty, the court in *Tobias, supra,* recognized the allegations of juror racial comments as potentially sufficient to warrant a new trial. 468 F. Supp. at 1291. Therefore, it ordered a hearing to further clarify the context in which the statements were made and to assess whether there was such a probability of prejudice demonstrated as to warrant a new trial. *Id.* The court in *Brewer, supra,* took a different view of the difficulty. It adopted Wigmore's view that the line between the objective act and subjective effect was too difficult to draw when such allegations of prejudice are made and, therefore, such allegations are per se incompetent. 444 F. Supp. at 489–90; 8 J. Wigmore, *Evidence in Trials at Common Law* § 2354, at 712. (J. McNaughton rev. 1961). The court also indicated it would not rigidly follow this rule if a substantial likelihood of such prejudice were shown, especially in a criminal case. 444 F. Supp. at 490.

Our concern with fairness to the parties and maintaining the integrity of the judicial system leads us to the conclusion that the *Tobias* view is better. We hold that the trial court may, in appropriate circumstances, consider allegations that such improper remarks were made. It must be careful, however, not to inquire into the juror's mental processes, including the effect such remarks had. When there is doubt as to whether the inquiry concerns a subjective or objective fact, the court should resolve it in favor of maintaining juror secrecy and not intruding into the mental processes of the jurors.

Even when the evidence of jury prejudice is found competent and shows a sufficient grounds for granting a new trial, the moving party must further show that prejudice to that party resulted. *Gereau, supra,* 523 F.2d

---

[6] For a discussion of this difficulty, *see* 3 J. Weinstein & M. Berger, *Weinstein's Evidence,* par. 606[04] (1981).

at 154. Where no prejudice to the moving party appears in the record, it is an error of law for the trial court to grant a new trial. *Kletsch v. Waukesha County,* 61 Wis. 2d 662, 663–64, 213 N.W.2d 367, 369 (1974). This, indeed, is a heavy burden upon the moving party since jurors are incompetent to testify as to whether the conduct affected their verdict, *i.e.,* their mental processes.

Although it has been stated that the trial court must determine whether the misconduct had or *might have had* an unfavorable effect upon the verdict against the party moving for a new trial, *Shefelker v. First National Bank,* 212 Wis. 659, 666, 250 N.W. 870, 872 (1933); *State v. Hartmann,* 46 Wis. 248, 249, 50 N.W. 193, 194 (1879), the statement was made in explanation of a more restrictive common law rule in effect before sec. 906.06 (2), Stats., was adopted. We believe that the appropriate determination, whether prejudice resulted, is "on the basis of the nature of the matter and its *probable* effect upon a hypothetical average jury." *United States v. Crosby,* 294 F.2d 928, 950 (1961) (emphasis added). Such a determinative basis avoids the prospect of a due process violation. *McMann, supra,* 435 F.2d at 920. *See also Tobias, supra,* 468 F. Supp. at 1291; *United States v. Blair,* 444 F. Supp. 1273, 1275–76 (D D.C. 1978). The trial court enjoys considerable discretion in making this determination, *Marshall v. United States,* 360 U.S. 310 (1959) (per curiam), but the court must place the improper conduct in context, including all the circumstances of the event and the entire record of the case. *Tobias, supra,* 468 F. Supp. at 1291; *Blair, supra,* 444 F. Supp. at 1276; *State v. Levitt,* 36 N.J. 266, 176 A.2d 465, 468–69 (1961).

After the defendant in *Levitt, supra,* was convicted of a criminal charge, a juror informed the judge of anti-Semitic remarks made in the jury room. The judge in-

formed defendant's counsel, who moved for a new trial, submitting the juror's affidavit. The trial court then allowed the prosecution time to investigate, and obtain other jurors' affidavits. A hearing was held and the trial court heard jurors' testimony on the events (but not on mental processes), and granted defendant a new trial. The appellate court generally approved of this procedure, stating that when the affidavit contained sufficient allegations that the verdict was "discolored by improper influences," the trial court should investigate. 176 A.2d at 467. The court must determine whether prejudice resulted. *Id.* at 468.

Although the court suggested that the better procedure was for the trial court itself, in the presence of counsel, to question the jurors at the hearing, we believe that ordinarily the better practice is for the attorneys to conduct the examination, at least in the first instance.

Our view is not to be construed as diminishing the discretionary authority of the trial court to call and interrogate witnesses, sec. 906.14(1), Stats., nor its control of the mode and order of interrogation and presentation of witnesses, sec. 906.11(1). On the contrary, the trial court should firmly exercise that authority to prevent attempted incursive intrusions into the proscribed mental processes of the jurors.

Finally, the *Levitt* court opined that the trial court should not examine the allegations in a vacuum, but view them in the context of the entire case. 176 A.2d at 468.

Based on our review of these cases, we conclude that to aid the trial court in determining whether evidence of jury prejudice is (1) competent, (2) shows substantive grounds sufficient to overturn the verdict, and (3) shows resulting prejudice, the moving party must place

the statements alleged in context, including the time and place where they occurred, what juror made the statement, whether and how many jurors were present, whether jurors not present were later informed of the statement, and other relevant circumstances. We believe that when a party mounts an attack upon the conduct of the jurors pursuant to sec. 906.06(2), Stats., it should be required to establish:

(1) that the statement was in fact made;

(2) specifically when it was made;

(3) the circumstances under which it was made;

(4) who made it;

(5) which, if any, jurors were present;

(6) whether jurors not present were informed of the statement; and

(7) other relevant facts about the statement which will assist the trial court to assess the prospect of unfair prejudice.

If these requirements are not met on the face of the affidavit, the trial court need not proceed with further investigation to determine the truth of the allegations and to reveal further circumstances surrounding the incident. If, however, the trial court exercises its discretionary authority to inquire further, it should take care not to inquire into jurors' mental processes.

The exact nature of such further proceedings rests largely within the trial court's discretion. *Wilson, supra,* 534 F.2d at 379. The line between proper and improper inquiry is often difficult to draw, and the court has the authority to take whatever actions are necessary to insure the inquiry does not exceed its proper scope. *Miller v. United States,* 403 F.2d 77, 82–83 (2nd Cir. 1968), *rev'd on other grounds,* 411 F.2d 825 (2nd Cir. 1969).[7]

---

[7] We note that although suggested by the trial judge, at no time did the appellant in the case before us request an evidentiary hearing with respect to the allegation. On the contrary, appellant's

The affidavit here is defective, particularly with regard to placing the alleged statement in context. Without that, the court cannot judge whether the three requirements, competency of the evidence within the meaning of the rule, sufficiency of the evidence to provide substantive grounds to overturn the verdict, and resulting prejudice from the misconduct, are met. At the hearing below, conducted after this court remanded, the context of the statements was not established. Further, it appears that neither party considered the impact of sec. 906.06(2), Stats., or brought it to the attention of the trial court or this court.

## EXTRANEOUS INFORMATION

Appellant does not challenge the truth of the statement that Alan Eisenberg "defended the Outlaws" or that Alan and Sydney Eisenberg were involved in the suicide of Judge Krueger. The involvement of the Eisenbergs in Judge Krueger's suicide is a matter of public record. *See State v. Eisenberg*, 48 Wis. 2d 364, 180 N.W.2d 529 (1971). "Involved" means connected, not "caused." The issue is whether this is the kind of extraneous information which justifies a new trial, and whether the affidavit is competent under sec. 906.06(2), Stats.

The analysis is much the same as that used for the allegation of religious prejudice. The requirements of competency, sufficient grounds for upsetting the verdict, and resulting prejudice apply. Again, the party must place the alleged statements in context. Conclusory allegations, like those here, beg the question they are to address and afford no factual basis for the issues presented.

counsel has erroneously asserted that the affidavit stands uncontroverted, and also erroneously asserts that the burden is on the respondent to refute it.

It is recognized that extraneous information which comes to the jurors from outside sources may be grounds for overturning the verdict, and juror testimony on this is competent. *Marshall v. United States,* 360 U.S. 310 (1959) (per curiam) (exposure to newspaper articles); *Mattox v. United States,* 146 U.S. 140 (1892) (bailiff's comments). Such allegations are particularly serious in criminal cases because of concern with defendant's sixth amendment right of confrontation. In criminal and civil cases there is also the prospect that a party did not receive a fair trial because the jury considered irrelevant, prejudicial, extra-record facts. This violates the principle of deciding the case on the evidence presented.

These principles also apply when the extraneous information comes from a juror rather than an outside source. *Marques, supra,* 600 F.2d at 747–48; *McMann, supra,* 435 F.2d at 817; *Blair, supra,* 444 F. Supp. at 1275–76; *see Dahl v. Harwood,* 263 Wis. 1, 12, 56 N.W. 2d 557, 562 (1953). It is necessary, though, that the juror with the information communicated it to the other jurors. Otherwise, any inquiry into what the juror knew merely involves the juror's own mental processes and is incompetent. *Eagle, supra,* 539 F.2d at 1170–71.

A juror is not expected to be free of all common knowledge concerning the parties, however. Generalized knowledge about the parties or some aspect of the case is permitted. *Gereau, supra,* 523 F.2d at 151; *McMann, supra,* 435 F.2d at 817–18. The key is whether specific, extra-record facts about the case on trial are brought in. *Gereau, supra,* 523 F.2d at 151.

In determining whether a statement falls into such permissible general knowledge or whether it is impermissible extraneous information, the court must consider the nature of what was said and the probability of

prejudice. *McMann, supra,* 435 F.2d at 818. In so doing, an important factor is whether specific, extra-record facts about the case on trial were introduced. *Gereau, supra,* 523 F.2d at 151.

In *Blair, supra,* the court granted a new trial·when it learned that one juror stated during deliberations that she personally knew one of the codefendants and that he was a drug addict. The case was a prosecution for narcotics distribution. The court found that specific aspersions on the actual moving party's character were not necessary. 444 F. Supp. at 1276. It found a reasonable possibility of prejudice. *Id.* at 1275–76.

In *McMann, supra,* another criminal prosecution, the court affirmed the district court's setting aside of the conviction because of such extraneous information. The juror's affidavit stated that several jurors informed the other jurors that they had known all about the defendant, that he was always getting into trouble, was generally a bad person, and related several unfavorable incidents concerning him. 435 F.2d at 815. The court found this did not come within the area of permissible general knowledge. *Id.* at 818–19.

Because the line between permissible general knowledge and impermissible extraneous information is not easily drawn, we treat these statements the same as the allegation of religious prejudice. The juror's affidavit in this case is conclusory and affords insufficient evidentiary and contextual support to a substantial attack upon the jury verdict. No tender of such evidence was made at the original hearing on the motion for a new trial nor at the trial court hearing on remand by this court.[8] The defective affidavit afforded no basis for an investigation into the claimed juror misconduct.

*By the Court.*—Judgment affirmed.

---

[8] *See* note 7, *supra.*