STATE of Wisconsin, Plaintiff-Respondent,

v.

Calvin Douglas OTT, Defendant-Appellant.

Court of Appeals

*No. 82–1191–CR. Submitted on briefs January 12, 1983.—*
*Decided February 16, 1983.*
(Also reported in 331 N.W.2d 629.)

For the defendant-appellant the cause was submitted on the briefs of *Margaret A. Maroney,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Stephen W. Kleinmaier,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Wedemeyer, J.

DECKER, C.J. Calvin Ott appeals from a judgment of conviction for injury by conduct regardless of life while using a dangerous weapon, pursuant to secs. 940.23 and 939.63(1)(a), (2), Stats., and from an order denying his motion for postconviction relief. This motion was premised upon an investigation into the jury's deliberations which revealed that a juror brought in a dictionary definition of "depraved." After conducting a hearing

pursuant to *After Hour Welding v. Laneil Management Co.*, 105 Wis. 2d 130, 312 N.W.2d 859 (Ct. App. 1981),[1] the trial court concluded that the juror's act did not give rise to substantial probable prejudice to the defendant and denied Ott's motion for a new trial. We disagree with the trial court's conclusion and find that there was probable prejudice to the defendant. We therefore reverse the conviction and remand for a new trial.

The charge against Ott arose out of a fight outside a tavern on December 2, 1980. In the tavern, Ott intervened in an argument between Robert Koller and Patricia Menkowski, whom Ott considered a friend. This led to an argument between Ott and Koller which lasted until the bar closed. Outside, Ott and Koller began to fight. Ott pulled a knife and stabbed Koller repeatedly.

From *voir dire* to closing arguments, the question of "depraved mind" was of central importance. The trial court gave the following instruction on "depraved mind":

Depraved mind regardless of human life does not mean that the mind of the defendant must have been diseased. Or that he must have had a mental disorder generally described as insanity or feeblemindedness. The depravity of mind referred to exists when the conduct causing injury demonstrates an utter lack of concern to the life and safety of another and for which conduct there is no justification or excuse.

The jury retired to begin deliberation at 11:25 a.m. They were given a written copy of the jury instructions. At 4:35 p.m., the jury asked and received permission to go home for the night. The following morning, the jury

[1] The result reached by this court in *After Hour Welding v. Laneil Management Co.*, 105 Wis. 2d 130, 312 N.W.2d 859 (Ct. App 1981), was reversed by the Wisconsin Supreme Court in *After Hour Welding v. Laneil Management Co.*, 108 Wis. 2d 734, 324 N.W.2d 686 (1982); however, the test we set forth was approved of and followed.

arrived at a guilty verdict. The trial court denied defense counsel's request to question the jury about outside influences.

Ott's appellate counsel subsequently learned that a juror may have returned to the second day's deliberations with the definition of "evinced" or "depraved" written on a card. Counsel received permission from the trial court to investigate, but the inquiry was limited by the trial court so as not to violate principles of "jury secrecy and not [to intrude] into the mental processes of the jurors," according to *After Hour Welding v. Laneil Management Co.*, 108 Wis. 2d 734, 739, 324 N.W.2d 686, 690 (1982), and sec. 906.06(2), Stats.

Each juror was interviewed by an investigator from the State Public Defender's Office. Nine of the twelve recalled that a juror had returned to deliberations with a dictionary definition of a word,[2] two could not recall the incident, and one refused to discuss it. The trial court refused to allow an additional investigation to determine which dictionary definition was used.

In an oral decision, the trial court denied Ott's motion for a new trial, stating that the ultimate issue at trial was credibility and that the written instructions would not be ignored by a jury. Ott appeals.

Section 906.06(2), Stats., governs inquiries into jury verdicts:

(2) Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning

---

[2] It would appear likely from the affidavit of the investigator that the juror had resorted to a dictionary for both "depraved" and "evinced." Ott does not contend that prejudice arose from "evinced."

his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received.

The dictates of this statute were followed with great care by the trial judge. Because jurors are foreclosed by the statute from testifying as to the effect extraneous information had upon their deliberations, the question of prejudice to the appellant will usually be a question of law not accorded deferential review by a reviewing court. *See After Hour Welding, supra,* 108 Wis. 2d at 741, 324 N.W.2d at 690–91.

Under the rule set forth in *After Hour Welding, id.* at 738, 324 N.W.2d at 689, we believe that the trial court applied the correct test of determining whether the evidence brought to the judge's attention is: (1) "competent";[3] (2) shows substantive grounds sufficient to overturn the verdict; and (3) shows resulting prejudice. We disagree, however, with the trial court's conclusion that no substantial probable prejudice resulted.

The record reveals that depravity was a central issue throughout the trial. That part of the jury instruction on the crime itself which dealt with depravity had two parts: what depravity is not, and what it is. The positive part of the definition required that the conduct "demonstrates an utter lack of concern to the life and safety of another and for which conduct there is no justification or excuse." From the plain words of the

---

[3] The state concedes the "competency" of the evidence for purposes of this appeal.

instruction, therefore, a jury which found a justification or excuse for the conduct would be obliged to find no depravity.[4]

While the exact dictionary definition brought in by the juror is not a part of the record before either the trial court or this court, we agree with the trial court that, to determine the question before us, a specific definition is not necessary. In his briefs, Ott catalogs a number of dictionary definitions for "depraved"; we researched a number of others. None of them includes the concept of "no justification or excuse" for conduct, not even Black's Law Dictionary. We think it impossible that the definition used contained this concept which we believe lies at the heart of the given jury instruction.

The state argues that *State v. Weso,* 60 Wis. 2d 404, 210 N.W.2d 442 (1973), stands for the proposition that the dictionary definition of "depraved" is equivalent to the legal one. *Id.* at 411, 210 N.W.2d at 446. We disagree. While in *Weso* our supreme court did cite Webster's Third International Dictionary for a definition of "depraved," a more recent case, *Balistreri v. State,* 83 Wis. 2d 440, 450–51, 265 N.W.2d 290, 294 (1978) indicates that the term has a technical meaning:

To the extent that the meaning of "depraved" in the criminal code varies from its dictionary meaning [i.e., "marked by debasement, corruption, perversion, or deterioration," *Webster's Third New International Dic-*

---

[4] We reject the state's argument that any justification or excuse found by the jury must be a reasonable one under *State v. Weso,* 60 Wis. 2d 404, 412, 210 N.W.2d 442, 446 (1973). While this may be an accurate statement of the law, it is not a distinction which was drawn for the jury in the instruction. There is no reason to expect a jury of lay people to infer a subtle legal distinction from the instruction given them.

*tionary,* 606 (1966)] the term may be said to have attained a technical meaning in the law. The existence of a technical meaning different from the ordinary meaning does not make the phrase vague. *See,* sec. 990.01(1), Stats., which provides: "All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."

We conclude that the dictionary definition, which in all likelihood centered on words such as "perverted," "corrupt," or "morally bad," was sufficiently broader than the technical meaning embodied in the instruction to probably prejudice Ott.

In doing so, we differ with the trial court's analysis. In its oral decision, the trial court stated: "I don't know how a jury would ignore those [written] instructions [in light of the instruction that requires the jury to follow the law as given in the court's instructions and nothing else.]." We believe the very fact that a juror brought in a dictionary definition to the second day of deliberations and made that fact known to the other jurors contradicts the trial court's conclusion.

We are not persuaded by the trial court's focus upon credibility: "I think the issues which were litigated were ultimately credibility, not any legal definition of any term that created a major problem for the jury." Given the facts, it appears that the issues of depravity and credibility are too intertwined to be successfully separated.

We conclude, therefore, that given the nature of the extraneous material brought to the jury's deliberations, the probable effect upon a hypothetical average jury would be prejudicial. *See After Hour Welding, supra,* 108 Wis. 2d at 741, 324 N.W.2d at 691. We reverse the

judgment and order of the trial court and remand the cause for a new trial.[5]

*By the Court.*—Judgment and order reversed and cause remanded.

---

[5] Because we determine that probable prejudice existed, we need not address Ott's second issue concerning burden of proof.