AFTER HOUR WELDING, INC., Plaintiff-Respondent,

v.

LANEIL MANAGEMENT CO., and Shoreland Manor Co.,
Defendants-Appellants-Petitioners.

Supreme Court

*No. 80–1246. Submitted on briefs September 9, 1982.—
Decided October 5, 1982.*

(Also reported in 324 N.W.2d 686.)

For the defendant-petitioners the cause was submitted on the briefs of *Sydney M. Eisenberg, pro se, M.L. Eisenberg & Associates,* Milwaukee, and *Bernard N. Bult,* of counsel, New London.

For the plaintiff-respondent the cause was submitted on the brief of *John J. Kastl* and *Poulos, Sengstock & Wilkoski, S.C.,* West Allis.

STEINMETZ, J. The issue is whether the circuit court for Milwaukee county erred in denying defendants' motion for a new trial due to alleged misconduct of the jury. The court of appeals found there was no error. We reverse and remand.

A jury trial before the Honorable Harvey L. Neelen, Reserve Judge, resulted in a verdict for the plaintiff against defendant corporations. Sydney Eisenberg was an officer of the defendant corporations and testified at trial. Before motions after verdict, defendants moved for a new trial claiming jury misconduct. The motion was supported by the affidavit of a dissenting juror which stated:

"During the course of the trial and during the time of my service on the jury, I heard other jurors say:
"1. Mr. Eisenberg is 'A Cheap Jew.'
"2. Alan Eisenberg, Mr. Sidney [sic] Eisenberg's son, defened [defended] the outlaws. The tone and the attitude of the statement about Alan Eisenberg was derogatory.
"3. 'They' (Alan and Sidney [sic]) were involved in the suicide of Judge Krueger. The tone and attitude convayed [sic] the idea that this was something bad the Eisenbergs had done."

The affidavit was attested to on May 23, 1980. The special verdict was signed April 15, 1980.

On appeal to the court of appeals, that court ordered the trial court to correct the record to include the transcript of the hearing on the plaintiff's motion for a new trial. The court reporter who recorded that hearing informed the court she was unable to find her notes of the

hearing. The court of appeals then remanded the case to the trial court for the purpose of making a record of plaintiff's motion. On remand the case was assigned to Judge Neelen who considered the motion originally. The court of appeals "[ordered] that the case [be] remanded to the circuit court which shall hold the required hearing within thirty days of the date of this order."

On February 6, 1981, Judge Neelen ordered both counsel to reconstruct or redo the hearing of April 15, 1980, of which the reporter's notes were lost. The original hearing consisted of arguments of counsel and statements by the judge with a ruling denying defendants' motion, and that is what was redone with no further evidence being taken. The matter is further complicated by the fact that the voir dire was not recorded. The judge and plaintiff's counsel were uncertain whether the jury on voir dire was asked whether they knew Sydney Eisenberg. Defendants' counsel's recollection was certain that he had asked the panel whether they knew Mr. Eisenberg or knew of him. Question or questions asked at the voir dire in this case are not determinative of the issue before the court. However, since the attorney for the defendants claimed to have been concerned about the negative reputation in the community that Mr. Sydney Eisenberg and his son might have, he should have requested that the voir dire be recorded. (SCR 71.01(3).) [1]

While the rule against impeachment of a jury verdict is strong and necessary,[2] it is not written in stone nor is it

---

[1] SCR 71.01(3) provides:

"(3) Voir dire examinations in any civil or criminal action need not be reported unless ordered by the court. Opening statements and closing arguments shall be reported in any action upon request of a party or upon order of the court. A request to report opening or closing argument shall be made on the record before any such argument has commenced."

[2] Policy reasons for the rule include the prevention of jury harassment, encouragement of free and open jury deliberations, pro-

a door incapable of being opened. It competes with the desire and duty of the judicial system to avoid injustice and to redress the grievances of private litigants.

The court of appeals was correct that the trial court must, when considering an issue of verdict impeachment, determine whether the evidence brought to the judge's attention is (1) competent, (2) shows substantive grounds sufficient to overturn the verdict, and (3) shows resulting prejudice. It is apparent from the record that the trial judge did not apply this test. Instead, the judge, when considering the content of the juror's affidavit, only stated: "But there is no proof that it affected their judgment."

Regarding the first part of the test dealing with the competency of the evidence, it is apparent that the trial court and parties at the hearing did not consider sec. 906.-06(2), Stats., which governed the issue. It states:

"(2) INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received."

motion of finality of verdicts, and reduction of the incentive for jury tampering. *McDonald v. Pless*, 238 U.S. 264, 267–68 (1915); *Jorgensen v. York Ice Machinery Corporation*, 160 F.2d 432, 435 (2nd Cir. 1947), *cert. denied*, 332 U.S. 764 (1947); *United States v. Eagle*, 539 F.2d 1166, 1170 (8th Cir. 1976), *cert. denied*, 429 U.S. 1110 (1977).

This statement is virtually identical to Rule 606(b) of the Federal Rules of Evidence, which codifies the common law as it has developed in many jurisdictions.

The statutory exception as to what a juror may testify to is "that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."

The concern for fairness to the parties and monitoring the integrity of the judicial system leads us to conclude that a trial court may, in appropriate circumstances, consider allegations that extraneous prejudicial remarks were made to jurors which were not a part of the judicially guarded evidence they received. The court must not inquire into the jurors' mental processes, including the effect such remarks had. The matter must be resolved in favor of maintaining juror secrecy and not intruding into the mental processes of the jurors.

The instant case is especially an appropriate one to consider allegations of jury misconduct, since the judge twice stated during the recorded hearing that the evidence to be considered by the jury raised purely an issue of credibility. He stated the jury could not compromise nor believe a part of each litigant's position, but rather had to choose under the instructions given and the evidence received, who they believed, Mr. Eisenberg, an officer of the defendant corporations, or witnesses for the plaintiff. That being the case, the alleged statements of jurors on extraneous matters about Mr. Eisenberg require that the trial judge conduct a hearing that consists of more than arguments of counsel as to whether they believe the verdict was perverse.

Whenever it comes to a trial court's attention that a jury verdict may have been the result of any form of prejudice based on race, religion, gender or national ori-

gin, judges should be especially sensitive to such allegations and conduct an investigation to "ferret out the truth." *Morgan v. United States,* 399 F.2d 93, 97 (5th Cir. 1968), *cert. denied* 393 U.S. 1025 (1969). For even if only one member of a jury harbors a material prejudice, the right to a trial by an impartial jury is impaired. *United States v. Booker,* 480 F.2d 1310 (7th Cir. 1973). The extent of anti-Semitism in America has been well-documented.[3] While the passage of numerous anti-discrimination laws has prevented many forms of discriminatory practices against Jews, and other minorities, subtler forms of such practices still persist. In addition, Jews are often the victim of negative stereotyping. The form of stereotyping as evidenced by the juror Stokes' affidavit has no place in our system of justice. Trial courts should do all within their means to ensure that verdicts have not been compromised by jurors who harbor prejudice towards any minority.

The second part of the test concerns whether the evidence shows substantial grounds sufficient to set aside a verdict, as a matter of law. This is not a requirement of sec. 906.06(2), Stats., since that section deals only with competency to testify and the admissibility of evidence. Sufficiency is decided on a case-by-case analysis. A motion for a new trial is directed to the discretion of the trial court and will not be disturbed on appeal absent a showing that the trial court abused its discretion. *Priske v. General Motors Corp.,* 89 Wis. 2d 642, 662–63, 279 N.W.2d 227 (1979); *Ballas v. Superior Mut. Ins. Co.,* 13 Wis. 2d 151, 154, 108 N.W.2d 192, 193 (1961). If the trial court proceeds on an erroneous view of the law or facts to demonstrate consideration of appropriate factors

---

[3] H. Quinley & C. Glock, *Anti-Semitism in America* (1979); P. Grosser and E. Halperin, *The Causes and Effects of Anti-Semitism: The Dimensions of a Prejudice* (1978).

for the exercise of its discretion, then that is itself an abuse of discretion. *Priske,* 89 Wis. 2d at 663; *Ballas,* 13 Wis. 2d at 154. To impeach a verdict by attacking a juror's fairness, the party must produce clear and convincing evidence. *Van Matre v. Milwaukee E. R. & T. Co.,* 268 Wis. 399, 410, 67 N.W.2d 831, 836 (1955). Because jurors are incompetent to testify with respect to their mental deliberations, direct evidence with respect to the effect of bias, prejudice or other misconduct will seldom be admissible. Thus, the prejudice to the moving party will usually be a question of law which is not accorded deferential review by this court.

The third and final requirement, prejudicial effect, like sufficiency, is also not a requirement of sec. 906.06(2), Stats., but a common law requirement. Although the court stated in *Shefelker v. First National Bank,* 212 Wis. 659, 666, 250 N.W. 870, 872 (1933) and *State v. Hartmann,* 46 Wis. 248, 249, 50 N.W. 193, 194 (1879), that the trial court must determine whether the misconduct had or might have had an unfavorable effect upon the verdict against the party moving for a new trial, that statement was made in explanation of a more restrictive common law rule in effect before sec. 906.06(2) was adopted. We find the more appropriate determination whether prejudice resulted is "on the basis of the nature of the matter and its probable effect on a hypothetical average jury." *United States v. Crosby,* 294 F.2d 928, 950 (2nd Cir. 1961).

The court of appeals found the affidavit here defective, particularly with regard to placing the alleged statements in context. We disagree. The court of appeals sent the case back to the trial court to reconstruct what occurred at the initial unrecorded hearing on the motion and that consisted only of arguments of counsel, not additional information regarding the allegations in the affidavit. Also, the trial court never considered sec. 906.06(2),

Stats. The contents of the affidavit stand as a verity at this time and, if believed, as a matter of law, would have had the probable prejudicial effect upon a hypothetical jury when considering a question of credibility.

This case is being sent back to the trial court again with instructions to conduct a hearing taking testimony as the judge believes necessary from persons who may have knowledge of the alleged incidents. Due to the thus far uncontroverted affidavit of the dissenting juror, the trial court should examine the juror under oath only as to the circumstances under which the statements were made and not as to what effect they had, if made, on himself as a juror or on the other jurors. The judge must then determine whether he is convinced by clear and satisfactory evidence the statements were made and determine as a matter of law the probable effect of them upon a hypothetical average jury.

To make these determinations, the trial court should consider the seven requirements stated by the court of appeals, but not be restricted nor limited by them:

"(1) that the statement was in fact made;
"(2) specifically when it was made;
"(3) the circumstances under which it was made;
"(4) who made it;
"(5) which, if any, jurors were present;
"(6) whether jurors not present were informed of the statement; and
"(7) other relevant facts about the statement which will assist the trial court to assess the prospect of unfair prejudice."

An affidavit of a juror alleging misconduct in the presence of the jury and qualifying under sec. 906.06(2), Stats., if thorough enough on its face, could convince a trial judge clearly and convincingly that a new trial was necessary since the probable effect of the extraneous in-

formation resulted in prejudice upon a hypothetical average jury.[4] However, the face of the affidavit, even though thorough, might not persuade the judge clearly and convincingly that a new trial was necessary and the judge could then rule in that manner without further proceedings. In the present case, where an uncontroverted affidavit concerned extraneous information about a witness and the sole issue in dispute was credibility of that witness, the trial court in the interest of justice must conduct a testimonial hearing to determine whether he believes the affiant. If the affiant is believable, then the judge may proceed by calling other jurors to determine whether statements were made. But the judge should not inquire as to what their effect was, since the judge must determine as a matter of law their effect. The judge should conduct the examination of jurors called, but the attorneys may submit questions to the judge they wish asked. The judge should record them and the rulings made on them. The judge must exercise great care to prevent questions concerning the thought processes of the juror or jurors. This is not a search providing a disgruntled litigant who received an adverse verdict a second chance, but a balancing test controlled by the judge to ensure that the jury instructions were adhered to, and

---

[4] We agree with the court of appeals interpretation of *Becker v. West Side Dye Works*, 172 Wis. 1, 177 N.W. 907 (1920), and conclude that the decision in *Becker* can be reconciled with this opinion. In *Becker*, a juror's affidavit alleged that other jurors referred to the plaintiff as "a Jew, a crook, and a liar." *Id.* at 5. The court let the verdict stand. It is not clear from the opinion whether the *Becker* court found the affidavit incompetent or insufficient to set aside the verdict. Since *Becker* was decided in 1920, when the existing common law strongly supported the general rule against impeaching a jury verdict and before the enactment of sec. 906.06(2), Stats., which broadened the opportunity for attacking improper jury verdicts, it is reasonable to conclude that the *Becker* court held the affidavit to be incompetent.

that the jury decided the case on the evidence received during the trial and the judge's instructions.

The common knowledge jurors are allowed and encouraged to bring to their deliberations does not include prejudicial information. Our system of justice seeks the truth, whatever the jury finds the truth to be, but that truth cannot be determined when the jury is exposed to extraneous prejudices or information that the judge finds clearly and convincingly might have affected a hypothetical average jury. The voir dire is designed to eliminate prospective jurors who hold prejudices by striking such jurors from the panel. Having done that, prejudices should not be allowed to creep into the jury room by extraneous information that the judge determines would have affected an average hypothetical jury.

The trial judge, as always in our system, must balance between the finality of jury deliberations and fairness to the litigants. Jury verdicts are not to be impeached easily, nor are they to be questioned without clear and convincing proof that extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

This case is returned to the trial court with instructions to hold such hearing as the judge deems necessary to accommodate the ends of justice.

*By the Court.*—The decision of the court of appeals is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.