Felix FANTIN, Plaintiff-Appellant,

v.

Joan M. MAHNKE and Badger State Mutual Casualty Company, Defendants-Respondents.

Court of Appeals

No. 82–1134. Submitted on briefs March 11, 1983.—
Decided April 25, 1983.
(Also reported in 334 N.W.2d 564.)

For the plaintiff-appellant the cause was submitted on the brief of *Brennan & Collins* of Milwaukee, *James P. Brennan,* of counsel.

For the defendants-respondents the cause was submitted on the brief of *Alan Shafrin* of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

DECKER, J.   Felix Fantin appeals from a judgment granted in his favor after a jury trial which awarded him

damages for an automobile accident in 1976. He contends that the trial court abused its discretion in refusing to allow a medical deposition to be read to the jury, that the verdict was perverse in failing to grant Fantin any damages for future pain and suffering, that the trial court should have found Fantin not negligent as a matter of law rather than submitting the question of his negligence to the jury, and that juror misconduct required a new trial. We are not persuaded by any of these arguments and accordingly affirm.

In the early afternoon of August 21, 1976, a car collision occurred at the intersection of 73rd and Morgan. The rear of a car driven by Joan Mahnke was struck by a car driven by Robert Haas as it was making a northbound left turn from Morgan on to 73rd Street. Fantin and his wife, Josephine, were in a car heading west on Morgan when the Mahnke vehicle was pushed by the impact into Fantin's traffic lane. Fantin did not stop in time and struck the Mahnke vehicle. Fantin and his wife were injured as a result of the collision.

At trial, the trial court refused to allow Fantin to have the deposition of Dr. Konstantine George read to the jury for the reason that it was cumulative to other medical testimony in evidence.

Testimony was given by a witness to the Fantin-Mahnke collision, Sally Iven, who stated that she heard the Haas-Mahnke collision, turned around to look, and saw Fantin's car 110–150 feet from the intersection. Fantin, on the other hand, testified that he did not see the Mahnke vehicle until it was five to ten feet in front of him.

Regarding Fantin's injuries, various testimony was taken. Dr. C. Hugh Hickey, who first examined Fantin four years after the accident, testified at Fantin's request that, in spite of Fantin's assertion that he had no hip or back trouble prior to the accident, Fantin was "on the

road" to hip replacement with or without the accident. Regarding Fantin's arthritic back, Hickey testified that bridging and spurring of vertebrae existed as of 1972, four years before the accident.

Dr. Earl Krieg testified for the respondents that the arthritis in Fantin's back had been there since at least 1973, three years before the accident. He opined that the accident did not aggravate Fantin's preexisting hip disease and that all the back problems that Fantin attributed to the accident were not so attributable.

The jury returned a verdict in favor of Fantin awarding him $6,500 for pain and suffering to date, $1,000 for medical expenses, $1,000 for loss of consortium, but nothing for future pain, suffering, and disability.

After the jury returned its verdict, an informal off-the-record discussion with the jury, trial judge and trial counsel transpired. Immediately thereafter, Fantin's attorney moved for a mistrial on the basis that at least one juror made an unauthorized visit to the accident scene. The trial court reserved its ruling until motions after verdict, at which time it denied all motions. Fantin appeals.

First, Fantin argues that the trial court abused its discretion in refusing to allow Fantin's attorney to read the deposition of Dr. George to the jury. We find no abuse.

Section 904.03, Stats., allows a trial court to exclude relevant evidence if its probative value is outweighed by a consideration of the needless presentation of cumulative evidence. Such a determination was made here. Exclusion of evidence under sec. 904.03 is a question of trial court discretion. *See Featherly v. Continental Insurance Co.*, 73 Wis. 2d 273, 283, 243 N.W.2d 806, 814 (1976).

Our extensive review of the record shows no abuse of discretion. The deposition testimony of Dr. George is very similar to that of Dr. Hickey; both agreed that hip

replacement surgery was necessary and both agreed that the arthritis preexisted the accident. Fantin's brief notes that some of Dr. Hickey's testimony "goes much further" than Dr. George's; insofar as that is true, we will find no error where the excluded evidence is subsumed by more comprehensive evidence. Fantin argues however, that "Dr. George felt that the automobile accident was a 'triggering' mechanism for the pain," which diagnosis differs substantially from Dr. Hickey's statement that the hip surgery was inevitable with or without the accident. We cannot agree with Fantin's characterization of Dr. George's testimony as being at odds with that of Dr. Hickey.[1] We agree, therefore, with the trial court's exclusion of the deposition as cumulative, and hold that there was no abuse of discretion.

---

[1] The source of the "accident-as-trigger" characterization of Dr. George's deposition testimony is the following colloquy:

Q. And what was your opinion?

A. My opinion is as I stated in my report, that he did have degenerative arthritis of the hips. No question about it. Many years ago, not two years ago; but long ago.

Q. Longstanding?

A. Longstanding. Chronic problem. For some reason or another on him, it was asymptomatic. In other words, he may have had a limp. He may have at times, but it did not cause him any disability to cause him to seek medical care. In other words, he was getting by. In other words, he didn't ask for help. Now, he states that he had this injury; and after that injury from the car accident, his hips, and especially the left hip started getting worse. *Not that the accident caused the arthritis. He had the arthritis, but sometimes we have seen that it takes one trigger mechanism of something to cause an arthritic hip, which is kind of a balancing itself out as far as pain is concerned to become painful. It could be done from many other things. Maybe he just fell down himself and triggered it.* [Emphasis added.]

We do not read this to mean that Dr. George believed that the accident was the trigger. There is little surety of that in Dr. George's phrasing.

Next, Fantin argues that the verdict was perverse for failing to award him damages for future pain and suffering. We disagree.

Appellate review of jury findings is limited to whether the record contains any credible evidence that under any reasonable view supports the verdict and removes the issue from the realm of conjecture. *Krueger v. Tappan Co.,* 104 Wis. 2d 199, 201, 311 N.W.2d 219, 221 (Ct. App. 1981). We must view the evidence in the light most favorable to the respondent and affirm if there is any credible evidence on which the jury could have based its decision, particularly where, as here, the verdict has the approval of the trial court.[2] *Id.* The appellant has, therefore, a difficult task on appeal.

It is evident that both Fantin's hips and back troubled him. However, the testimony of both Dr. Hickey and Dr. Krieg indicated that Fantin's hip and back problems antedated the accident and, in Dr. Hickey's words, "Mr. Fantin was on the road to [disability] with or without the accident. I don't think Mr. Fantin would have been spared the condition that he was in at the time of these reports had there been no accident. I think he was on that road." Hickey further testified that the bridging and spurring of Fantin's vertebrae, which condition causes stiffness and pain, existed at least four years before the accident.

Although there was testimony that the accident aggravated preexistent conditions, we believe there was also sufficient evidence that Fantin's pain and disability would have been the same without the accident to justify

[2] While the trial judge initially commented at the conclusion of the trial that the lack of damages for future disability was a "problem," he ultimately denied the motions after verdict to change the answers.

the jury's finding of no damages for future pain and suffering.

Next, Fantin contends that the trial court erred in submitting the question of Fantin's negligence to the jury rather than finding that he was not negligent as a matter of law. We disagree.

The trial court took Fantin's request to be found not negligent as a matter of law as a request for a directed verdict. In determining whether a directed verdict should be granted, the evidence is viewed most favorably to the contention of the party against whom the verdict is sought to be directed. *Thompson v. Howe,* 77 Wis. 2d 441, 448, 253 N.W.2d 59, 62 (1977). The test is whether there is any credible evidence which under a reasonable view would support a verdict contrary to that which is sought. *Id.*

Mrs. Sally Iven, who lived at the corner of 73rd and Morgan, was a witness to the Mahnke-Fantin collision. She testified that she was outside of her home when she heard the Haas-Mahnke collision which propelled the Mahnke vehicle into Fantin's traffic lane. Mrs. Iven turned around to see what had happened and saw the Fantin automobile between 110–150 feet east of the intersection. Fantin, however, testified that he did not see the Mahnke automobile until it was within five or ten feet of his car. This testimony clearly raises the issue of lookout with respect to Fantin. The operator of an automobile having the right of way on an arterial highway must still maintain a proper lookout. *Leckwee v. Gibson,* 90 Wis. 2d 275, 287, 280 N.W.2d 186, 191 (1979).

We believe the testimony of Mrs. Iven and of Fantin himself was sufficient for Fantin's negligence to be a jury question and we reject as patently meritless Fantin's assertion in his brief that the testimony was "undisputed that Fantin saw the Mahnke automobile as soon as it could be seen to be entering on his highway."

Finally, Fantin urges us to grant him a new trial because a juror, during an interlude in deliberations of the jury, took an unauthorized view of the accident scene. That circumstance was disclosed during an informal post-verdict discussion of the case by the jury in the presence of the trial judge and trial counsel. It is undisputed that the view occurred and the juror expressed the opinion that the scene was not correctly represented upon the diagram of the area that was received in evidence.

Fantin's counsel never requested and the trial judge apparently did not conduct an inquiry into the unauthorized view. No transcript of such inquiry, if conducted, has been supplied, nor have we been supplied with a transcript of the trial judge's analysis of this issue. Thus, we have no additional facts available to us, nor do we have a means of resolving or analyzing the disputed contention of the respondents that the jurors asserted that the unauthorized view did not affect the jury's deliberations.

Most jurisdictions have adopted a well-settled rule that such an unauthorized juror view is not itself prejudicial in a civil case in the absence of a showing that it influenced or affected the verdict. The cases from other jurisdictions are collected and summarized in Annot., 11 ALR 3d 918 (1967).

There is unvarying agreement in the cases that such an unauthorized view is juror misconduct that hazards the improper presentation of evidence without the corresponding right of cross-examination or refutatory evidence. Nonetheless, there is distilled from the cases a bifurcated analysis. The threshhold question is: is the improper evidence prejudicial *per se?* If not, the correlative question becomes: was the party prejudiced by being deprived of the opportunity to meet it? We consider the early case of *Peppercorn v. City of Black River Falls,* 89 Wis. 38, 61 N.W. 79 (1894), *overruled on other grounds*

in *Miller v. Illinois Central Railroad,* 36 Wis. 2d 184, 194, 152 N.W.2d 989, 903 (1967), consistent with this analytical methodology which is expressly authorized in *Nelson v. State,* 186 Wis. 648, 653–54, 203 N.W. 343, 344–45 (1925); and *Parb v. State,* 143 Wis. 561, 563, 128 N.W. 65, 66 (1910).[3] In the case at bar, this court is limited to the threshhold question by virtue of Fantin's tactical strategy of requesting no fact-finding inquiry into the misconduct.

If the answer to the threshhold question is "yes," the verdict is invalidated. If it is answered "no," the verdict is invalidated only if the verdict's challenger demonstrates the prejudicial effect of the unauthorized view. Such a demonstration would naturally begin with a request for an inquiry into the misconduct. No such request was apparently made here, however. Thus, a rule in granting a new trial has evolved that, absent a showing that the unauthorized view has had an effect on the verdict, a new trial will not be granted.[4] Obviously, a trial judge will have a superior opportunity to determine the effect of the unauthorized view upon the verdict. Fantin has not demonstrated to us that he made an effort to have the trial judge evaluate the effect upon the verdict of the juror's unauthorized view. This failure to preserve that facet of his claim of error prompts us to restrict consideration of that claim to the threshhold analysis: whether the improper evidence is prejudicial *per se.*

---

[3] We are not of the opinion that *Peppercorn v. City of Black River Falls,* 89 Wis. 38, 41, 61 N.W. 79, 80 (1894), holds that all unauthorized views will be presumed to have influenced the verdict in the absence of evidence to the contrary. *See* 58 Am. Jur. 2d, New Trial § 84 (1971). It is the nature and content of what is viewed, rather than the view itself, that determines prejudice. *See Parb v. State,* 143 Wis. 561, 563, 128 N.W. 65, 66 (1910).

[4] *See* § 3, 11 ALR 3d 918, at 928–32 (1967).

Unlike other attempted verdict impeachments, (*see After Hour Welding, Inc. v. Laneil Management Co.*, 108 Wis. 2d 734, 324 N.W.2d 686 (1982), *reversing* 105 Wis. 2d 130, 312 N.W.2d 859 (Ct. App. 1981)), the question of the competency of jurors to testify to misconduct, sec. 906.06 (2), Stats., is not implicated. We address only the undisputed fact that there was an unauthorized juror view of the accident scene, and that the juror observed that the accident scene was not correctly represented upon a diagram received in evidence.

In *Peppercorn*, the plaintiff sought recovery for personal injuries sustained in a fall upon an allegedly defective sidewalk. During trial and before deliberation, jurors, without the knowledge of the trial court or counsel, visited and "examined the place of the accident *for the purpose of ascertaining the condition of the walk*." *Id.* at 41, 61 N.W. at 80 [emphasis supplied]. Noting that the examination constituted unauthorized and improper evidence and was prejudicial, the trial court granted a new trial.

A jury may view an accident scene if authorized by the trial court, but it should be instructed that such a view is for the purpose of understanding the evidence received at trial and the view should not be substituted for such evidence. A jury view is determined by the exercise of trial court discretion. Fantin has not claimed that a jury view was denied by the trial court and our extensive review of the record has not disclosed such a denial. Our experience demonstrates that when jury views are denied in the trial court, it is usually because of judicial trial economy and the absence of demonstrated need for a view to enable the jury to understand the evidence in the case rather than a need to preclude the jury from observing the scene.

There is nothing inherently prejudicial about a jury view of the accident scene in this case. This intersection

accident occurred at a simple intersection of divided and undivided roadways. A meticulous review of the trial transcript discloses no dispute in the evidence with respect to the accident scene that could have affected the manner in which the accident occurred or the respective negligence of the drivers involved. Unlike the situation in *Peppercorn*, the accident scene itself is not alleged to be defective in any respect.

We assume that the juror's observation that the accident scene was incorrectly portrayed upon the diagram in evidence was brought to the other jurors' attention. Fantin has not explained to us and our review of the record has not disclosed how that circumstance can have prejudicially affected the verdict or Fantin.

The record discloses that all three of the drivers involved in the accident had the physical opportunity to view each other's automobiles without topographical obstruction of any kind. The involvement of the three colliding automobiles was undisputed. The issues tried were principally those of driver negligence with respect to signalling, lookout, and management and control. Obstruction to view by other topographical circumstances was not litigated. Fantin has not demonstrated that the result of the view presented prejudicial evidence to the jury. Our conclusion in this respect is not to be construed, however, as an endorsement of a juror's unauthorized view of the accident scene.

We conclude that the evidence of an unauthorized view of the accident by a juror does not here constitute grounds to sufficiently set aside the verdict as a matter of law, *After Hour Welding, supra,* 108 Wis. 2d at 740, 324 N.W.2d at 690.[5]

*By the Court.*—Judgment affirmed.

---

[5] We reject the respondents' argument that Mahnke's negligence should not have been a jury question because no cross-appeal was made.