Russell J. BITTNER by Ella Bittner, his Guardian, Plaintiff-Appellant,†

v.

AMERICAN HONDA MOTOR CO., INC., a Foreign Corporation, Honda Motor Co., Ltd., a Foreign Corporation, Honda Research & Development Co., Ltd., Defendants-Respondents,

DODGE COUNTY, a Wisconsin Municipal Corporation, Defendant.

Court of Appeals

*No. 91–3067. Submitted on briefs February 3, 1993.—Decided December 9, 1993.*

(Also reported in 511 N.W.2d 325.)

†Petition to review filed.

For the plaintiff-appellant the cause was submitted on the brief of *Lynn R. Laufenberg, William M. Cannon*, and *Patrick O. Dunphy* of *Cannon & Dunphy, S.C.* of Milwaukee.

For the defendants-respondents, American Honda Motor Co., Inc., Honda Motor Co., Ltd., and Honda Research & Development Co., Ltd., the cause was submitted on the brief of *Richard A. Bowman, Wayne D. Struble* and *Mary T. Novacheck* of *Bowman and Brooke* of Minneapolis, Minnesota, and *Thomas C. Ewing* and *Bernard J. Bobber* of *Foley & Lardner*, Milwaukee.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. Russell Bittner appeals from a judgment dismissing his complaint against three defendants we refer to as "Honda."[1] Bittner brought this action to recover damages for injuries he suffered

---

[1] The three defendants are American Honda Motor Co., Inc., Honda Motor Co., Ltd., and Honda Research & Development Co., Ltd.

in 1988 when his Honda all-terrain vehicle (ATV) over-turned. The verdict was adverse to him. He requests a new trial on grounds that the same five-sixths of the jurors did not agree on all questions, prejudicial juror misconduct occurred, the trial court improperly admitted "comparative risk" testimony, the jury's apportionment of negligence and the damage award must be set aside, and the interests of justice require a second trial. We reject his contentions and affirm.

## I. INTRODUCTION

Plaintiff Russell Bittner was twenty-six years old on August 13, 1988, the day he was badly injured in an accident which occurred while he was operating a 1983 Honda ATV "Big Red." In 1982 he had purchased an ATV, the Honda ATC 200. In January 1983 he traded his ATV for the three-wheeled "Big Red" his brother Robert had. The brothers regularly rode their ATVs and frequently drove them on a mowed pathway through a grassy area near the Bittner home.

On August 13, 1988, Russell and Robert rode their ATVs on the path. Russell was about fifty feet ahead of Robert. Russell turned on a curve to the left and Robert made a wider turn, hanging back because of dust in the air. As Robert rounded the curve, he saw Russell's vehicle on its side in the pathway with Russell lying on the ground about one foot from the machine. Russell was bleeding from his nose and his mouth and was unconscious. No witnesses saw the accident, and because of his injuries, Russell was unable to testify to what had happened.

On the day after the accident, Robert and his uncle, Kenneth Dahl, went to the accident site. Robert showed Dahl where Russell had been found. The two walked the path looking for what might have caused

the vehicle to tip over. Dahl saw a mound and depression along one edge of the path, as well as several marks in the grass which Dahl concluded were made by the wheels of an ATV. A later survey confirmed the location of the mound and depression.

To support product liability and negligence claims, Russell presented the testimony of several expert witnesses. One testified that Russell's three-wheeled ATV was unstable because of the combined effect of the lack of differential, lack of rear mechanical suspension and a high center of gravity. Another testified that Russell's ATV had a tendency to overturn easily, and that this dynamic instability rendered it defective and unreasonably dangerous to the average user. Another testified that in his opinion, Russell's ATV became unstable when the right wheel unexpectedly encountered the mound, and the machine then went into a pitch roll to the right when the front wheel encountered the depression. In his opinion, Honda negligently designed the machine. A fourth expert testified that Russell's ATV was "deceptively stable" to the average consumer.

The jury also heard evidence concerning an investigation by the United States Consumer Product Safety Commission regarding the safety of three-wheeled ATVs. William Kitzes, a former employee of the commission, testified as to the organization and operation of the commission. He reviewed numerous commission documents reflecting the progress of the investigation. That investigation culminated in an enforcement decision on December 12, 1986, in which the commission determined that three-wheeled ATVs present "an imminent and unreasonable risk of death, serious illness or severe personal injury." The United States Department of Justice filed suit against ATV manufac-

turers, including Honda, to recall all three-wheeled ATVs. A consent decree followed between the manufacturers, including Honda, and the government. By the terms of the decree, the manufacturers were required to send out a safety alert and stop sales of three-wheeled ATVs in the United States.

## II. FIVE-SIXTHS VERDICT

The trial began in August 1991 and lasted seven weeks. Twelve jurors and two alternates heard the evidence. The case was submitted to the jury on a special verdict consisting of thirteen questions. By stipulation, all fourteen jurors were allowed to deliberate. The parties further stipulated that agreement by eleven or more jurors would satisfy the five-sixths rule. Section 805.09(2), Stats., provides: "A verdict agreed to by five-sixths of the jurors shall be the verdict of the jury. If more than one question must be answered to arrive at a verdict on the same claim, the same five-sixths of the jurors must agree on all the questions."

The jury found both Honda and Russell causally negligent. Two jurors, Kay Gassner and Catherine Kehrmeyer, dissented from the answer to the question regarding Honda's causal negligence. Another two jurors, Jeannine Paul and Helen Giese, dissented from the answer to the question regarding Russell's negligence. However, no juror dissented from the negligence apportionment, forty-nine percent to Honda and fifty-one percent to Russell.

The jury found, with no dissent, that Russell was causally negligent in failing to wear a helmet at the time of his accident. It found that eight percent of his injuries and damages were caused by his failure to wear a helmet, but three jurors dissented — Catherine Kehrmeyer, Joseph Lauber and Florence Twardokus.

The jury answered the damages question without dissent. It found that Honda's conduct was not outrageous, but three jurors dissented — Jan Gassner,[2] Betty Draheim and Jeannine Paul.

Russell asserts that the trial court should not have accepted the verdict in view of the five-sixths rule. We disagree.

In *Scipior v. Shea*, 252 Wis. 185, 190-92, 31 N.W.2d 199, 202-03 (1948), the court invalidated the verdict because less than five-sixths of the jurors consistently answered the questions of negligence and comparative negligence. Two jurors dissented from findings that the defendant was negligent and another two jurors dissented from findings that the plaintiff was negligent. Yet the jury found, with no dissents, that the defendant was sixty-five percent negligent and the plaintiff thirty-five percent negligent. Because the four jurors' votes on negligence were inconsistent with their votes on the comparison, the court excluded their votes from the comparative negligence findings, leaving only eight who agreed on that answer. This left the parties with less than five-sixths of the jurors agreeing to the verdict.

The *Scipior* rationale was followed in *Fleischhacker v. State Farm Mut. Auto. Ins. Co.*, 274 Wis. 215, 216-20, 79 N.W.2d 817, 818-20 (1956) (verdict invalid where negligence apportioned twenty percent to defendant and eighty percent to plaintiff, with no dissents, but two jurors dissented from a finding that defendant was negligent and another two from a finding that plaintiff was negligent). *Fleischhacker* was followed in *Hupf v. State Farm Mut. Ins. Co.*, 12 Wis. 2d 176, 188-89, 107 N.W.2d 185, 192-93 (1961) (verdict

---

[2] Kay Gassner and Jan Gassner are two different jurors.

invalid where negligence apportioned eighty percent to plaintiff and twenty percent to defendant, with no dissents, but one juror dissented from at least one finding regarding defendant's negligence and two others dissented from at least one finding regarding plaintiff's negligence).

However, if a dissent supports the verdict for the winner, the dissent is not counted when applying the five-sixths rule. The dissent is regarded as favoring the verdict for the winner "only more so," and is ignored because it is not essential to a complete verdict. *Vogt v. Chicago, M., St. P. & P. R.R.*, 35 Wis. 2d 716, 719-21, 151 N.W.2d 713, 715 (1967).

In *Vogt*, the jury found that the defendant was negligent. It found plaintiff's decedent was also causally negligent, with one juror dissenting. The same dissenting juror dissented from the finding that the defendant was ninety-five percent causally negligent but did not dissent from the finding that the decedent was five percent causally negligent. Two different jurors dissented from the damage award. The *Vogt* court held that the dissent by the single juror on the negligence question was not essential to the verdict as a whole. *Id.* at 721, 151 N.W.2d at 715. That juror's dissent simply supported the verdict for the winner, the plaintiff, only more so. The court reasoned that that juror:

> [W]ould have gone further and found the plaintiff not causally negligent, thereby increasing the judgment for the plaintiff from 95 percent to 100 percent. The defendant should not be permitted to attack the verdict on this ground. Since the verdict as a whole was for the plaintiff, the dissent as to the negligence of the deceased can only be interpreted

as evincing a belief that the verdict should have been for the plaintiff, only more so. Therefore, it follows that the dissent is not essential to support the verdict for the plaintiff and the verdict is complete . . . .

*Id.* at 720-21, 151 N.W.2d at 715. The court held that the five-sixths rule was satisfied.

*Vogt* was followed in *Lorbecki v. King*, 49 Wis. 2d 463, 182 N.W.2d 226 (1971). In *Lorbecki* juror Mouton dissented from the finding that the defendant was causally negligent. All jurors agreed that the plaintiff was causally negligent. The jury assigned twenty percent of the causal negligence to the defendant and eighty percent to the plaintiff, but two other jurors dissented and those two jurors also dissented from the damage award to the plaintiff. The court held that the verdict satisfied the five-sixths rule, concluding:

[J]uror Mouton would have gone further than the rest of the jury and found the defendant not causally negligent at all. Since the verdict as a whole was in favor of the defendants, the dissent as to defendant King's negligence and causation can only be interpreted as evincing juror Mouton's belief that the verdict should have been for the defendants, "only more so," in the language of *Vogt*. Excluding her answer to the comparison question would result in the anomaly of allowing the plaintiff to secure a new trial because of a failure which was not prejudicial to him.

*Id.* at 468, 182 N.W.2d at 229.

The verdict before us is valid. Since the jury apportioned fifty-one percent of the total causal negligence to Russell, Honda is the winner. Applying *Vogt* and *Lorbecki*, we disregard the dissents of Kay Gassner and

Catherine Kehrmeyer to the findings that Honda was causally negligent. Their dissents support the verdict for Honda. They agreed with the apportionment of fifty-one percent of the negligence to Russell, "only more so," because they would have found Honda not negligent at all.

The votes of dissenters Paul and Giese must be excluded from the apportionment answer, but that does not deprive the verdict of the required number of jurors under the five-sixths rule, in this case at least eleven. We are left with the same twelve jurors in agreement.

Three jurors dissented from the finding that eight percent of Russell's damages were caused by his negligent failure to wear a helmet, but that is not an issue because Russell takes nothing. For the same reason, whether Honda's conduct was outrageous is not an issue, and the three dissents from the jury's answer on that question are irrelevant. Punitive damages are not recoverable unless compensatory damages are recovered. *Tucker v. Marcus*, 142 Wis. 2d 425, 443, 418 N.W.2d 818, 825 (1988). We ignore both sets of dissents.

We conclude that the trial court properly accepted the verdict, notwithstanding the dissents.

## III. JUROR MISCONDUCT

Russell moved to set aside the verdict on the grounds that extraneous prejudicial information was improperly brought to the jury's attention and outside influences were brought to bear on the jury. The trial court denied the motion.

Russell submitted affidavits by jurors pertaining to a visit by Juror Kay Gassner to the scene of the accident. Honda filed opposing affidavits. The trial

court found that the "scene" involved the mowed path, a mound and a depression. It held that Russell had not shown by clear and convincing evidence that Kay Gassner "took a view of the scene resulting in juror misconduct." We disagree.

Juror Giese stated in her affidavit that during the first few weeks of trial, Juror Kay Gassner said she had gone to the accident scene, walked the path where the accident occurred and that, based on her investigation, she concluded that there was no reason for the ATV to have tipped over absent Russell's "doing something wrong." Giese also averred that Kay Gassner stated this to a number of jurors.

Juror Miskimins stated in her affidavit that during the trial, Juror Kay Gassner told Miskimins that she and her husband had gone to the accident scene, walked it and determined that there was no way an ATV could tip over on the trail. Miskimins also averred that Gassner said she and her husband looked at the Bittner's house and that "it was a real dump." She further averred that Gassner made these statements in the presence of Jurors Erdmann, Winnig and Pasko.

Juror Erdmann averred that during the second week of the trial Kay Gassner told her that she had visited the accident scene. Juror Kehrmeyer stated in her affidavit that she heard Juror Kay Gassner tell Juror Giese that she had gone to the accident scene, but she did not hear Kay Gassner say that Russell must have done something wrong. Jurors Doughty, Lauber, Pasko, Twardokus and Winnig averred that they did not know Kay Gassner visited the accident scene until the trial was over.

Juror Kay Gassner stated the following in her affidavit: A few weeks into the trial [held three years after the accident] she and her family drove to a park. She

left her family at the park, drove to the accident scene alone, parked her car and walked into the grass about ten feet where she thought a path might have been at one time. The grass was knee high. She did not see the mound or the depression. She returned to her car and drove away. She did not discuss the site with her husband. During the trial she told Juror Giese that she had been to the scene but did not say that Russell must have done something wrong. Juror Kehrmeyer was present when she had that conversation. Gassner does not recall telling anyone else. During the jury's deliberations she did not mention her visit to the scene or anything related to it. Kay Gassner's husband stated in his affidavit that he did not visit the accident scene.

When deciding a motion to impeach a verdict, a trial court must consider whether competent evidence was submitted to support the motion, whether the evidence shows substantial grounds sufficient to overturn the verdict, and whether the evidence shows resulting prejudice. *State v. Poh*, 116 Wis. 2d 510, 515-16, 343 N.W.2d 108, 112 (1984).

Section 906.06(2), Stats.,[3] controls the competency of evidence submitted to impeach a verdict. No issue is

---

[3] Section 906.06(2), Stats., provides in pertinent part:

Upon an inquiry into the validity of a verdict, . . . a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

raised regarding the competency of the evidence submitted to impeach the verdict.[4]

■

The next question is whether the evidence shows a substantial ground sufficient to overturn the verdict. *Poh*, 116 Wis. 2d at 516, 343 N.W.2d at 112. Misconduct by a juror can be a ground sufficient to overturn a verdict. An unauthorized jury view of the scene of an accident can be such misconduct. *Fantin v. Mahnke*, 113 Wis. 2d 92, 99-100, 334 N.W.2d 564, 568 (Ct. App. 1983); *Parb v. State*, 143 Wis. 561, 563, 128 N.W. 65, 66 (1910).

The trial court found, on the basis of the affidavits, that Russell had failed to show by clear and convincing evidence that Juror Kay Gassner took a view of the accident site, because Gassner claimed that she did not see the mound or depression. We disagree.

■

Juror Kay Gassner went to the accident site. In her affidavit she admitted that she visited the site and, in the presence of Juror Kehrmeyer, told Juror Giese so. Jurors Giese, Miskimins, Erdmann, and Kehrmeyer averred that Gassner said she went to the accident site. Such an unauthorized view is juror misconduct. *Fantin*, 113 Wis. 2d at 99, 334 N.W.2d at 568. It hazards the improper presentation of evidence without the corresponding right of cross-examination or refutatory evidence. *Id.*

---

[4] We recently held that sec. 906.06(2), Stats., renders incompetent testimony by a juror regarding extraneous prejudicial information that was improperly brought to the attention of less than all the jurors who deliberated on the verdict. *State v. Messelt*, 178 Wis. 2d 320, 337, 504 N.W.2d 362, 368 (Ct. App. 1993), petition for review granted October 19, 1993.

■
The next question is whether the misconduct prejudiced Russell. *Id.* The trial court reasoned that even if Juror Kay Gassner's visit to the site was misconduct, Russell had failed to show prejudice by clear and convincing evidence because none of the affidavits showed that any juror was swayed by anything Gassner recounted regarding her visit to the site. The trial court misconstrued the test for prejudice. Whether prejudice resulted from juror misconduct is a question of law determined on the basis of the nature of the matter and its probable effect on the hypothetical average jury, not its effect on the actual jury. *After Hour Welding, Inc. v. Laneil Management Co.*, 108 Wis. 2d 734, 741, 324 N.W.2d 686, 690-91 (1982).

The trial court ultimately applied the correct test when it concluded that even if it accepted the affidavits of Jurors Giese and Miskimins as true, "Gassner did not present any evidence to the jury which plaintiff did not have an opportunity to meet" and that the plaintiff's evidence on the accident and site "was thorough and well presented." We agree with the trial court's conclusion. We are satisfied that, as a matter of law, even if Juror Gassner told several other jurors that she and her husband visited the site and that there was no way an ATV could tip absent Russell's doing something wrong, Russell was not prejudiced. What caused Russell's ATV to tip was a major issue at the trial. During the seven-week trial, the jury was given all the facts and heard many experts give opinions on the subject. For that reason, a hypothetical average jury would give little, if any, weight to the opinion of a single juror that the ATV could not tip absent Russell's doing something wrong.

Finally, Russell asserts that it was prejudicial misconduct for Jurors Kay Gassner and Kehrmeyer to discuss the merits of the case before submission for deliberation. In its preliminary instructions, the trial court told the jurors not to discuss the case with anyone, not even with fellow jurors, until after all of the evidence was in and they had heard the attorneys' closing arguments and the court's instructions. After hearing from the bailiff that one juror was attempting to discuss the trial, the court reinstructed the jury as to its obligations. For the reasons previously stated, Russell has not shown that he was prejudiced by the conversations between the jurors.

## IV. COMPARATIVE RISK EVIDENCE

As we indicated earlier, Kitzes, a former employee of the Consumer Product Safety Commission, testified on Russell's behalf. Russell's counsel stated that the purpose of Kitzes' testimony was to prove notice of defect to Honda and to show the commission's methodology when gathering data which resulted in the consent decree. The evidence put in through Kitzes included data regarding the frequency of deaths and injuries associated with ATVs. Honda did not object to the evidence, insofar as it was offered only to establish notice to Honda and the commission's procedure.

Over Russell's objection, Honda cross-examined Kitzes concerning a "comparative risk" study undertaken by Dr. Verhalen, an associate executive director with the commission. Verhalen, an epidemiologist, criticized the commission's use of statistics regarding the comparative injury rate among various off-road recreational vehicles without adjusting for the relative frequency of use. The original comparison made by the commission, was between reported injuries associated

with ATVs, snowmobiles, minibikes and trail bikes. Verhalen claimed that the original comparisons were provided purely to draw the commissioners' attention to an emerging problem but, he told the commission, the comparison had misled persons into believing that ATVs were two to three times more dangerous than snowmobiles. He claimed that other factors must be considered to draw conclusions about the relative degrees of danger in using these recreational vehicles. Those factors include hours of use, miles traveled and conditions of use.

Before the trial, Honda had identified as one of its experts Roger McCarthy, an engineer. Russell moved to preclude McCarthy from testifying concerning comparative risk analysis. That analysis compared the risk of injury or death from riding ATVs to the same risk from using other products or engaging in other recreational activities. Without giving its reasons, the trial court denied Russell's motion and allowed McCarthy to testify at trial. McCarthy testified that comparative risk analysis is generally accepted by the scientific community and represents the sound application of statistics and mathematics.

McCarthy's testimony was consistent with the analysis Verhalen had reported to the commission. McCarthy's ATV risk analysis compared the risk of injury or death associated with ATV use to that associated with the use of other recreational products. His analysis compared those risks for other recreational activities, including riding dirt bikes, swimming, skateboarding, skydiving, scuba diving, snowmobiling and snow skiing. His analysis reflected only an association of injuries and deaths with certain activities. It did not attempt to determine causation, and he acknowl-

edged that it could not be used to explain what caused Russell's accident.

On appeal, Russell asserts that admission of McCarthy's testimony was error as a matter of law and undoubtedly influenced the jury in its findings of contributory negligence and apportionment of comparative fault.

We ordinarily review a trial court's evidentiary ruling to determine whether the court exercised discretion in accordance with accepted legal standards and the facts of record. *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). Generally, for an evidentiary ruling to be upheld, the record should show both that the court exercised its discretion and the basis for that exercise. *Id.* Where, however, as here, the trial court has ruled on an evidentiary question without stating its reasons, an appellate court "should independently review the record to determine whether it provides a basis for the trial court's exercise of discretion." *Id.* at 343, 340 N.W.2d at 502. Our review satisfies us that the trial court did not erroneously exercise its discretion when it allowed McCarthy's comparative risk testimony.

Through Kitzes' testimony, the jury heard statistics regarding the frequency of injuries and deaths associated with ATV use. Such evidence is admissible in a product liability case in the trial court's discretion to show that the defendant knew or should have known of the existence of an alleged defect. *Lobermeier v. General Tel. Co.*, 119 Wis. 2d 129, 150, 349 N.W.2d 466, 476 (1984); *Netzel v. State Sand & Gravel Co.*, 51 Wis. 2d 1, 9, 186 N.W.2d 258, 263 (1971).

However, a danger existed that the jury would use Kitzes' testimony for purposes other than showing notice to Honda and explaining the procedure the commission had employed. The danger was that the jury would conclude from the evidence that ATVs must be defective and dangerous merely because of the number of injuries and deaths associated with ATV use. Russell's decision to use that evidence justified the trial court's decision to allow McCarthy to testify to his comparative risk analysis. McCarthy's expert opinions tended to assist the jury in interpreting the statistics Kitzes presented on injury and death associated with ATV use. For that reason, the record provides a basis for the trial court's decision to allow McCarthy's testimony. The court also had a sound basis in law for its ruling. Section 907.02, Stats., provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." McCarthy's testimony was admissible under sec. 907.02.

## V. APPORTIONMENT OF NEGLIGENCE

The jury apportioned the causal negligence forty-nine percent to Honda and fifty-one percent to Russell. Russell asserts that the apportionment is grossly disproportionate, and that Honda offered no evidence from which any reasonable jury could conclude that he operated his machine inappropriately at the time of the accident.

We will not upset a verdict, including the jury's apportionment of negligence, if any credible evidence

supports it. *Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723, 726 (1979). The credibility of the witnesses and the weight afforded their individual testimony is left to the jury. *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984). If more than one reasonable inference may be drawn from the evidence, we must accept the jury's choice. *Id.* at 305-06, 347 N.W.2d at 598. We search for credible evidence to sustain the verdict and not for evidence to sustain a verdict the jury did not reach. *Id.* at 306, 347 N.W.2d at 598.

The record contains credible evidence supporting the jury's finding that Russell was negligent and its apportionment of negligence to him. Russell's brother testified that Russell had previously operated the ATV over mounds four to five inches high without difficulty. He also testified that he had seen Russell successfully drive through depressions as deep as the one involved in the accident. An expert testified that, in his opinion, a reasonably attentive driver should encounter no problems riding over the mound involved. The same expert testified that a person of Russell's size could easily steer the ATV to keep it on the path, since the maximum steering effort necessary was equivalent to one inch of handlebar turn. He also testified that Russell must nevertheless have steered straight or even further off the trail to hit the depression after his ATV struck the mound. Finally, Russell's brother agreed that the ATV involved in the accident had probably provided hundreds of hours and thousands of miles of usage without a mishap before the accident.

## VI. DAMAGES

██ The jury determined that Russell's damages for past and future pain, suffering and disability were $250,000. He argued to the trial court that that amount is so low as to evince perversity. When, as here, the trial court determined on motions after verdict that damages should not be overturned for inadequacy, we will set aside the court's finding that the evidence supports the verdict only for an abuse of discretion. *Springen v. Ager Plumbing & Heating, Inc.*, 19 Wis. 2d 487, 489, 492, 120 N.W.2d 692, 693, 694-95 (1963).

██ A verdict is perverse when the jury clearly refuses to follow the direction or instruction of the trial court upon a point of law or the verdict reflects highly emotional, inflammatory or immaterial considerations, or an obvious prejudgment with no attempt to be fair. *Becker v. State Farm Mut. Auto. Ins. Co.*, 141 Wis. 2d 804, 820, 416 N.W.2d 906, 913 (Ct. App. 1987) (citation omitted). The trial court noted that for a verdict to be perverse something must support a finding that considerations which were ulterior to a reasonably fair application of the jury's judgment had controlled or materially influenced the jury. *Id.*

The trial court concluded that while the damages for past and future pain, suffering and disability were low, it could not be said that the jury made no attempt to be fair. The jury deliberated for a day and a half, and dissents were lodged to several questions. It set damages for future medical expenses at $7,125,000. This shows that the jury considered Russell's evidence more credible than Honda's on that issue. It set damages for loss of future earning capacity at $200,000, which shows that the jury considered Honda's evidence more

credible than Russell's on that issue. In sum, the court determined, the verdict reflects a careful and conscientious review of the evidence and an attempt to be fair and does not reflect emotional, inflammatory or immaterial considerations.

We are satisfied that the trial court properly exercised its discretion. Under these circumstances, we can do no more than affirm the court's ruling sustaining the amount of damages.

As a second ground for overturning the amount of pain and suffering damages, Russell asserts that it was produced in part by the trial court's failure to clarify an instruction. At Honda's request, the court instructed the jury: "You may only consider such pain and suffering as the plaintiff suffered while conscious." Honda supported its request by reference to testimony by an ambulance attendant that plaintiff was unconscious at the scene of the accident. Plaintiff's counsel expressed concern that the instruction might cause the jury to believe "that the plaintiff must have a level of consciousness consistent with those who have suffered no injury in order to award him damages for conscious pain and suffering." Russell's counsel asked that the court add two sentences to the instruction: "There has been evidence that the plaintiff . . . was unconscious for a period of time. You may only consider such pain and suffering as the plaintiff suffered while conscious." The trial court declined to do so.

Russell's counsel suggested to the trial court that the requested instruction would make it clear to the jury that being unconscious means not being aware *at all*, as opposed to being aware to a diminished level. But, the sentences counsel asked be added to the instruction did not convey that thought.

A trial court possesses broad discretion when drawing instructions, so long as it fully and fairly informs the jury of the applicable principles of law. *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 334, 475 N.W.2d 587, 597 (Ct. App. 1991). We will sustain the choice of instruction so long as the instruction, considered as a whole, correctly states the law. *Id.* The instruction given by the trial court did not incorrectly state Wisconsin law. "When evidence is presented that the plaintiff was unconscious for a period of time following the accident, . . . [the jury should be instructed] that it should only consider such pain and suffering as the plaintiff suffered while conscious." Wis J I—Civil 1755, Comment (citations omitted). We conclude that the trial court did not err by failing to give Russell's requested modification to the conscious pain and suffering instruction.

Russell relies on *Gerth v. American Star Ins. Co.*, 166 Wis. 2d 1000, 1010-11, 480 N.W.2d 836, 841 (Ct. App. 1992), to support his claim that the court should have given the requested modification, but *Gerth* is inapposite. In that case, we rejected a defendant's suggestion that substantial pain and suffering damages were inappropriate because plaintiff's pain was modified by the use of drugs, since the defendant offered no proof that the medications the plaintiff had received eliminated his pain. *Id.* at 1010, 480 N.W.2d at 841. We held that even if the medication assisted in reducing his pain, evidence of the plaintiff's suffering during his periods of consciousness provided sufficient basis to support the trial court's award. *Id.* at 1010-11, 480 N.W.2d at 841. The *Gerth* court did not hold that a trial court must provide the type of clarification that Russell's counsel requested here.

116

We conclude that the trial court did not erroneously exercise its discretion when it denied a new trial on the basis of Russell's attack on the adequacy of the pain and suffering damages.

## VII. NEW TRIAL IN INTEREST OF JUSTICE

The court of appeals can award a new trial "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." Section 752.35, Stats. We decline to exercise our discretion under sec. 752.35 to order a new trial.

The real controversy was fully tried. The case was tried for almost seven weeks. Approximately four hundred seventy exhibits were identified on the record. As we have observed, the jury deliberated for a day and a half. Russell has provided us with nothing on which to predicate a finding that the controversy had not been fully tried.

For us to order a new trial on grounds that it is probable that justice has for any reason miscarried, we must find a substantial probability that a second trial will produce a different result. *Vollmer v. Luety*, 156 Wis. 2d 1, 16, 456 N.W.2d 797, 804 (1990). Given the nature of the evidence, and the evident attention that the jury paid to the facts during the seven-week trial, we cannot say that a second trial probably will produce a different result.

*By the Court.*—Judgment affirmed.